# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA

## Hoffman, Appellant, *v.* Philadelphia.

*Municipalities—Eminent domain—Damages—Compensation for delay—Land taken for park—Act of June 15, 1871, P. L. 391—Evidence—Improper valuations by witness—New trial.*

1. When land is taken by a municipality in the exercise of the power of eminent domain, the owner is deprived of the use of his property and should be compensated at once for the injury done; if payment be delayed the owner has the prima facie right to claim damages as compensation for delay. If the municipality would excuse itself for delaying payment, the burden is upon it to show that the owner has been extortionate in his demands and has named a sum exorbitant and unreasonable; failing in this the right of the owner to damages for delay in payment in such amount as the jury may assess is unquestionable.

2. On the trial of an appeal from an award of viewers in proceedings to assess damages for land condemned by a municipality the trial judge committed reversible error in charging the jury that the plaintiff was not entitled to damages for delay in payment if there was an unreasonable, unwarrantable and stubborn claim by him for excessive damages, in the absence of evidence that the parties had made any effort to agree on the damages or that plaintiff had made any demand whatever upon defendant therefor.

3. The Act of June 15, 1871, P. L. 391, providing that "It shall not be lawful to assess, apportion or charge the whole or any portion of the damage done to or value of the land so appropriated to, among, or against other property adjoining or in the vicinity" thereof, is applicable in proceedings to assess damages for land

appropriated for park purposes, although the statutory rule has been modified by subsequent legislation as applied to many kinds of street and other public improvements.

4. In proceedings to assess damages for land appropriated for park purposes the measure of damages is the difference between the market value of the entire tract before the taking and the market value of the remainder of the tract after the taking.

5. In fixing the amount of damages for land taken for park purposes witnesses must confine themselves to such market values before and after the taking, without making deductions for benefits, and where a witness appears to have made deductions for benefits from his estimate of the value after the taking, a new trial should be granted.

Argued March 25, 1915. Appeal, No. 483, Jan. T., 1914, by plaintiff, from judgment of C. P. No. 4, Philadelphia Co., Sept. T., 1912, No. 556, on verdict for plaintiff, in case of Jacob Hoffman v. City of Philadelphia. Before BROWN, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Appeal from award of a board of viewers in condemnation proceedings. Before CARR, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $96,400 and judgment thereon. Plaintiff appealed.

*Errors assigned* were rulings on evidence and instructions to the jury.

*J. Lee Patton,* for appellant.

*Edwin O. Lewis,* Assistant City Solicitor, with him *Michael J. Ryan,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE ELKIN, May 26, 1915:

This is an action for damages growing out of a condemnation whereby a portion of the land of appellant was taken by the city for park purposes. While there are twenty-one assignments of error, many of them

relate to unimportant and immaterial details which would not justify a reversal if standing alone, but several of them are based on the main contentions upon which appellant very confidently relies.  The most important question in the case is whether the jury were properly instructed as to compensation for delay in payment. The ordinance directing the opening of the parkway and condemning the land for park purposes was approved 14 December, 1910, and the damages have not yet been paid.  The jury of view to assess damages was appointed in January, 1911, but did not file their report until August, 1912.  From the award of viewers both sides appealed and the litigation has been pending from that time to the present.  There is no evidence to show that the parties, or either of them, made any effort to adjust the amount of damages which would be a fair compensation for the land taken.  The case took the usual course before the viewers and in the courts, both parties standing upon the testimony of such witnesses as could be produced in support of their respective contentions relating to the difference in value before and after the taking.  If the law contemplates, as this court has said it does, that in the first instance the parties will themselves attempt to agree upon the amount of damages to be paid by way of just compensation for the land taken or injured, then these litigants are equally at fault because neither party attempted to make an amicable settlement with the other at any stage of the proceedings. The city condemned the land and took possession.  The owner has been deprived of his property and can only assert a claim for damages.  This was the situation when the case was tried in the court below.  In answer to points and in his general charge the learned trial judge instructed the jury in substance as follows:

"If you believe that there has been an unjust, arbitrary and improper delay without just cause, you may consider the question of compensation for delay under the principle of which I have spoken.  On the

other hand, if you find from the evidence and all the facts in the case that there was an unreasonable, unwarrantable and stubborn claim by the plaintiff for excessive damages, and that the city was justified in resisting the claim upon the advice of experts in whose opinion its officials had the right to rely, then it was not only their right but their duty to contest this claim, and you should give no sum in allowance for this element of damages."

To the same effect but differently phrased, this instruction was repeated several times in answer to points and in the general charge. There was no evidence that plaintiff had made any claim for damages, unreasonable, unwarrantable or otherwise, prior to the appointment of viewers, or indeed at any later time, except as he endeavored to sustain the amount claimed in his declaration by witnesses produced before the viewers and at the trial. Nor did the city produce any testimony to show that plaintiff had stubbornly resisted any offers to agree upon the amount of damages to which he was fairly entitled. Both sides acted upon the theory that they would take their chances on the result of a law suit rather than attempt to agree among themselves. These are the facts, what is the law? The clearest and best exposition of what the law contemplates in the nature of damages for delay in payment in this class of cases will be found in the opinion written by our Brother STEWART in Wayne v. Penna. R. R. Co., 231 Pa. 512. It was there very well said that the right of the owner to any use of the land, inconsistent with the use for which it was condemned, ceases as soon as it is taken, and his right to damages immediately vests. The distinction between interest as an incident of debt and damages for delay in payment was clearly pointed out. As to the right of the owner to recover damages for delay in payment, this court speaking through Brother STEWART in that case said (p. 515):

"Whether the owner is entitled to damages on this account, and if so, how much, are questions sometimes for

the jury. Prima facie, he is entitled to damages for delay in payment. The law contemplates that in the first instance parties will themselves agree upon the amount. If they do agree, it is presently payable and interest attaches as an incident. If they fail to agree and either appeals to the court, it becomes a question of damages and here, again prima facie, the owner is entitled to damages for the delay. But in fact he may not be so entitled. If he has disappointed the law and stubbornly refused to name an amount which he would be willing to accept as compensation, or in the same spirit has been extortionate in his demands, and has named a sum exorbitant and unreasonable, a jury might well find that he has himself unjustifiably provoked the delay and deny him all damages therefor. But the law will not presume any such conduct on his part. If the corporation would excuse itself for its delay on any such ground, the burden is on it to show the excusing facts; failing in this, the right of the owner to damages in such amount as the jury may assess is unquestionable. The right results as a matter of law; the quantum alone is for the jury to determine."

And thus the legal right, incidentally involving the method of procedure and the burden of proof, is so clearly stated that he who runs may read and understand. In the case at bar the city did not undertake to prove any excusing facts to justify the delay, nor does the evidence show that appellant had stubbornly, or for any other reason, refused to name an amount he would be willing to accept as compensation—indeed he was not asked to name an amount that would be satisfactory to him. Aside from the amount stated in his declaration, and which he produced witnesses to sustain at the trial, there is nothing to even indicate what he demanded. Under these circumstances it was error for the learned trial judge to instruct the jury that if they found from the evidence there was an unreasonable, unwarrantable and stubborn claim by the plaintiff for excessive dam-

ages, they should not allow any sum as damages for delay in making payment. The facts did not warrant this instruction which entirely ignored the prima facie right of plaintiff to damages for delay and that the burden was on the city to establish the excusing circumstances.

No amount was demanded in this case except in the statement of claim filed in the court below and the plaintiff substantially sustained his claim by witnesses produced at the trial. It is true that the witnesses of appellee fixed the depreciation in market value much below the amount claimed, but depreciation in market value before and after the taking was the question in controversy between the parties, and we see nothing in the record to justify a departure from the rule as stated in Wayne v. Penna. R. R. Company, above cited.

To sustain the instruction of the learned trial judge relating to the question of compensation for delay appellee relies on Pierce v. Lehigh Valley Coal Co., 232 Pa. 170; Duffy v. York Haven Water & Power Co., 242 Pa. 146, and other cases of like import. These were cases sounding in tort and there was no actual taking of property under the power of eminent domain. But even in the Duffy case this court said:

"The mere fact that the verdict was so much below the demand will not of itself warrant a final conclusion that plaintiffs' claim was so excessive and unconscionable as to warrant the defendant in withholding payment for the injury it had inflicted."

Even in that class of cases, the question is for the jury under proper instructions by the court; and the instructions must necessarily be based upon facts sufficient to warrant a finding that the claim was so excessive and unconscionable as to justify defendant in resisting payment of the exorbitant demand.

Again, our cases make a clear distinction in the application of the rule between an action founded in tort and a claim for damages for land taken under the power of eminent domain. When the land is taken, the owner is

deprived of the use of his property, and should be compensated. at once for the injury done; if payment be delayed he has the prima facie right to claim damages as compensation for delay. This distinction was pointed out by Brother MOSCHZISKER in Rea v. Pittsburgh & Connellsville R. R. Co., 229 Pa. 106, in which it was said, (p. 114) :

"The record shows no offer of settlement at any figure, nor do we find any indication therein that reasonably lower demands would have met with payment." In the case at bar, as in that case, the question was for the jury, but the instruction complained of here relieved the defendant from the burden the law cast upon it and failed to give plaintiff the benefit of his prima facie right to compensation for delay. This in our opinion was harmful error and the verdict would seem to indicate that the jury may have been misled as to the rights of the complaining land owner in this respect.

We also agree with the contention of counsel for appellant that in determining the depreciation in value before and after the taking, "it shall not be lawful to assess, apportion or charge the whole or any portion of the damages done to or value of the land so appropriated, to, among or against the other property adjoining or in the vicinity of the land so appropriated, nor the owners thereof." It is so written in the Act of 15 June, 1871, P. L. 391, and as applied to the appropriation of land for park purposes the provisions of this statute have not been repealed: Mill Creek Sewer, 196 Pa. 183. There has been a modification of this statutory rule as applied to many kinds of street and other public improvements by subsequent legislation, but as to the taking of land for park purposes the law still remains as stated by this court in Susanna Root's Case, 77 Pa. 276. But this only means that in assessing damages for land taken, it is not lawful to charge against those damages benefits that may have resulted to adjoining lands nor even to the owner upon the lands not taken. This rule does not apply to the

appropriation of land for roads, streets and highways; and it has been modified as applied to sewers and some other kinds of improvements by subsequent legislation: Morewood Avenue, 159 Pa. 20; Park Avenue Sewers, 169 Pa. 433; Mill Creek Sewer, 196 Pa. 183; Broad Street Widening, 225 Pa. 184. The rule still remains in force when land is taken for park purposes. The mere statement of the rule does not solve the difficulty, because the question still remains what is the difference in market value before and after the taking, and this fact is to be determined by the jury from the evidence adduced at the trial. The testimony of witnesses is the basis of the inquiry, and the difference in market value before and after the taking is the measure of damages. What was the value of the entire tract before the taking is the starting point? What was the value of the remainder of the tract after the taking is the next inquiry? The difference is the measure of damages. The witnesses cannot estimate the benefits and charge against depreciation any specific sum on this account. They must confine themselves to market value before and after the taking without making deductions for benefits. What was it worth before the taking, and what was it worth after the taking? These are the questions to be addressed to the witnesses and their answers should be responsive without adding items or deducting specific sums by way of benefits estimated as a result of the improvement. As we read the testimony only one witness said anything about benefits and this was developed on cross-examination. But even this indicated that the witness may have fixed his valuations upon a wrong basis. When the case is again tried this should be guarded against by witnesses as well as by counsel.

We cannot undertake to discuss each of the numerous assignments of error as many of them relate to immaterial details.

The seventh, eighth, and ninth assignments are sustained, but the other matters complained of as errors

aside from the two main questions considered in this opinion, can be corrected at the trial if need be without further discussion here.

All those assignments relating to the questions of compensation for delay and the proper measure of damages are sustained in so far as they are at variance with the views hereinbefore expressed.

Judgment reversed and a venire facias de novo awarded.                                           .