## Whitcomb *v.* Philadelphia, Appellant.

*Municipalities—Eminent domain—Sewage disposal plant—Damages—Evidence—Prospective development—Plans—Hearsay.*

1. In a proceeding to assess damages for land condemned by a city for a sewage disposal plant, where it appears that the land was below the level of high tide in two neighboring rivers and a tidal creek, and where it also appears that, notwithstanding the low level of the land, the owner claimed that it was adapted for manufacturing establishments, it is proper to admit evidence as to how the property was protected at the time of the taking by a well constructed system of dykes, ditches and pumping stations, and also that on a tract of neighboring, although not contiguous land, of the same general composition, there had been built a large manufacturing establishment. The opinion of a witness based on these facts as to the availability of the land for industrial sites, is clearly competent.

2. Such testimony, however, would come to naught, if the owner did not show that there was a demand, at the time of the taking, for the land for manufacturing purposes, or that a demand in the near future might reasonably be anticipated. For this purpose he may offer proof that similarly located land in the neighborhood was being extensively used for manufacturing sites, and that offers had been made to buy the land, or part of it, as a manufacturing site at or about the time it had been taken. The individual who communicated the offer, the man to whom it was communicated, and any one standing by who heard it, would be competent to testify to the fact that an offer had been made but not as to the amount of such offer. Such testimony would not be hearsay.

3. A witness may testify as to the use of properties similarly situated in the same neighborhood, having the same general elements as the property in question. If the property extends to a county line, reference to land in the adjoining county, in like use, is proper.

4. It is also proper to admit in evidence in such a case, the prospective development and the plans and study of railroad extensions in the neighborhood. Such evidence cannot be considered as hearsay.

*Municipalities—Eminent domain—Damages—Delay in payment —Interest—Presumption as to rate.*

5. When land is taken under the power of eminent domain the owner thereof acquires the right to its value immediately upon appropriation. Until that value has been definitely ascertained, it is called damage, not a debt due; but when ascertained it relates back to the time of taking, for which the owner is entitled to compensation for delay in its payment, unless just cause be shown to the contrary. This compensation is measured by the normal commercial rate of interest during the period of detention. If no evidence is given as to that rate, the presumption is that the legal rate was in effect.

6. Where the owner does not name an exorbitant price, or do anything to delay settlement he is entitled to the legal rate of interest as damages; and it is not error for the trial court to refuse, and not read to the jury, a point to the effect that "interest should not be allowed in this case, inasmuch as the so-called Interest Act of June 1, 1915, P. L. 685, is unconstitutional." The affirmance of such a point would be to deprive the owner of his lawful right to have his compensation for delay measured in the usual way.

*Practice, Supreme Court—New trial—Abuse of discretion—Assignments of error—Appeals.*

7. The Supreme Court will not sustain an assignment of error, complaining of a refusal of a new trial, unless the record shows a manifest abuse of discretion.

Argued Jan. 15, 1919. Appeal, No. 148, Jan. T., 1919, by defendant, from judgment of C. P. No. 1, Philadelphia Co., March T.; 1917, No. 4052, on verdict for plaintiff in case of Fanny K. Whitcomb v. Philadelphia. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING and KEPHART, JJ. Affirmed.

Appeal from award of board of viewers.   Before SHOE-
MAKER, J.

Verdict and judgment for plaintiff for $387,856.29.
Defendant appealed.

*Errors assigned* were various rulings on evidence, suf-
ficiently appearing by the opinion of the Supreme Court,
and refusal of new trial.

*Glenn C. Mead,* Assistant City Solicitor, with him *Wil-
liam Brown, Jr.,* Assistant City Solicitor, and *John P.
Connelly,* City Solicitor, for appellant, cited: Hall v.
Del., L. & W. R. R. Co., 262 Pa. 257; Stone v. Del.,
Lack. & W. R. R. Co., 257 Pa. 456; Rea v. Pittsburgh &
Connellsville R. R. Co., 229 Pa. 106; Girard Trust Co. v.
Phila., 248 Pa. 179.

*Francis Shunk Brown,* with him *Yale L. Schekter* and
*Ira Jewell Williams,* for appellee, cited: Pittsburgh &
Western R. R. Co. v. Patterson, 167 Pa. 461; Stone v.
Del., Lack. & W. R. R. Co., 257 Pa. 456; Pittsburgh, etc.,
R. R. Co. v. Rose, 74 Pa. 362; Roberts v. Phila., 239 Pa.
339.

OPINION BY MR. JUSTICE KEPHART, March 24, 1919:

The City of Philadelphia on July 27, 1916, by con-
demnation proceedings, acquired a piece of land contain-
ing 354.8 acres for a sewage disposal plant.   This judg-
ment, appealed from by the city, was the result of an ac-
tion instituted by the appellee to recover the market value
of that property, considering all of the elements that ordi-
narily tend to give it value.   One of the elements of value
urged was that the property was useful or adaptable as
a manufacturing site.   It was in the center of, or near,
manufacturing    establishments.    Railroad    facilities
were in close proximity, as well as shipping facilities
within easy reach.   It was quite near large labor cen-
ters, and efforts had been made to purchase some of the
property for a manufacturing establishment prior to

the time of taking. The City of Philadelphia had, in the course of its planning, taken this property into consideration as early as 1909 as being capable of development as a location for a manufacturing plant. This was shown by a plan utilizing this section of the water front for improvement by the building of wharves, docks, railroads, buildings and communicating streets. The appellant complains of the admission of evidence to prove these assertions of fact and also evidence showing the physical characteristics of the land and its adaptability for the use claimed.

Taking up the two last mentioned complaints, the appellee's testimony shows investigations made for the purpose of ascertaining the suitability of the property for manufacturing and industrial purposes. From test borings made over the tract at various times, appellee gave a general idea of the surface and subsurface soil, so that the jury might know that the property was capable of sustaining the concentrated loads imposed by foundation walls, columns and machinery of industrial buildings. The composition of this land was similar to that in nearby sections upon which large industries had been erected.

The Whitcomb property is situated near the Delaware and Schuylkill rivers and Darby creek; it lies below the level of high tide in these streams. In connection with the discussion of the character of the soil, attention was called to the manner in which the property was protected from the incursion of this tidal water. It was done by a well-constructed system of riveted dykes or levees along the banks of the streams, and a system of drainage by ditches, feeders and canals leading to pumping stations located at the river banks. The pumping stations regulate the water level in the canals. The court received all this evidence in so far as it described the conditions existing at the time of taking, but did not receive testimony as to anything that developed since that time. This was quite proper. The importance of know-

ing that the formation of the land was of such character that it could be used for industrial purposes is apparent; if no foundations could be secured for the buildings and machinery without immense outlays, or if the land over-flowed with water at each high tide, or if it were not properly drained, its availability as a manufacturing site was considerably lessened, if not altogether extinguished. The witness who described these conditions did not treat them as existent for any specified manufacturing purpose. His testimony related to conditions on and in the ground and the probable use to which the land could be put from a physical or engineering point of view. He fortified his deductions by illustrations pertinent to the latter then under investigation; and cited situations in this country and other countries where dykes had been successfully used to keep tidal waters from overflowing adjoining lands.

The comparison of this property with that of Hog Island was not a trial error. It was not made for the purpose of showing that an immense structure like the shipping plant could or was likely to be located on this particular land, but to compare the topography of Hog Island with that of the appellee's land, and show that Hog Island, of the same general composition, had built on it a large manufacturing establishment, even though its substratum was not as favorably situated as that of the Whitcomb land; while a property intervened between it and the river, some few hundred feet away, this circumstance would not destroy its use as an industrial site when considered in connection with water transportation. The evidence as to the physical characteristics, the comparisons just discussed, as well as the opinion of the witness based on these facts as to the availability of this land for industrial sites, was clearly competent: 10 R. C. L. Sec. 185, p. 216; Marine Coal Co. v. Pittsburgh, McKeesport and Youghiogheny R. R. Co., 246 Pa. 478. It was still incumbent upon the appellee to show that there was a demand, at the time of

taking, for the land for that purpose, or that a demand in the near future might reasonably be anticipated. If such evidence be not present, all the testimony which we have just discussed would come to naught.

Reference was made to land similarly located in the neighborhood then used for manufacturing sites. We see nothing irregular about this. Neighborhood is not confined to contiguous land. It may embrace territory within a reasonable distance from and having many of the same general attributes as this land. The admission of such testimony must be left largely to the sound discretion of the trial court. Of course, properties unconnected, separated by miles, or even yards, of undeveloped, intervening space, should not, merely because they are situated close to the land taken, be considered within the neighborhood for the purpose of establishing beyond question that the land would in all probability be used in the near future for industrial sites. The evidence as to the uses generally made of such properties should be followed by other circumstances having a tendency to show that such future use was within the range of reasonable probability. The mere fact that a manufactory was adjoining, is not of itself sufficient to create a demand for future use for the property close by. But, when a section of the country, advantageously located with respect to rail and water facilities, is being extensively used for manufacturing purposes, it is some evidence that a tract in the neighborhood may be called for similar use, or that a future demand might reasonably be anticipated: Marine Coal Co. v. Pittsburgh, McKeesport and Youghiogheny R. R. Co., supra. Like observations may be made with respect to the property being near large labor centers, and the plan of the City of Philadelphia made some years ago showing contemplated Delaware river improvements. All this evidence might not be sufficient to submit to the jury the question of probable future demand. We need not so decide, as we have in this case that which sustains its admission and causes

all these matters here discussed to become important in the decision of the case.  Offers were made to purchase a part of this land for use as a manufacturing site.  The credibility of the witness who so testified was for the jury.  These offers did not come through an agent of an undisclosed principal, as the offerors were acting ostensibly for themselves.  But, if they did act as agents, it would not be necessary to call the person who authorized the submission of the offer to testify that he had authorized it.  The fact to be proven was that offers had been made to buy the land, or a part of it, as a manufacturing site, to show demand at or about the time of taking, not price or value.  The individual who communicated the offer, the man to whom it was communicated, and anyone standing by who heard it, would be competent to testify to the fact that an offer had been made but not the amount thereof.  It was, therefore, not hearsay.

Opinions of persons, having a special and peculiar knowledge of the location and use of properties of the character under discussion, may be given as to the best use that can be made of the land in dispute when a proper foundation has been laid for such opinion.  It is unnecessary to repeat all the different phases of evidence upon which the appellee bases her case.  It is sufficient to say enough was brought upon the record to permit the introduction of the evidence here complained of; a witness may testify as to the use of properties similarly situated in the same neighborhood having the same general elements as this property.  Township, city or county division lines will not forbid the introduction of this testimony.  The appellee's property extended to Delaware County and reference to land adjoining in that county, in like use, was proper.

The prospective development and the plans and study of railroad extension and facilities were not objected to as being hearsay, nor was their admission covered by the general objection to the offer of testimony.  We doubt very much if this testimony can be considered hearsay.

The land was adapted for industrial sites, and there was a demand for its use as such, and this element of value could be shown in estimating the damages suffered by the taking.    All of the assignments of error relating to the admission of evidence in this connection are overruled.

When land is taken under the power of eminent domain, the owner thereof acquires the right to its value immediately upon appropriation.. Until that value has been definitely ascertained, it is called damages, not a debt due; but when ascertained it relates back to the time of taking, and the owner is entitled to compensation for delay in its payment, unless just cause be shown to the contrary: Wayne v. Penna. R. R. Co., 231 Pa. 512; Hoffman v. Phila., 250 Pa. 1; and 261 Pa. 473. This compensation, like all other charges for wrongfully withholding money, is measured by an interest rate recoverable as damages.    This rate will be the normal commercial rate during the period of detention.    If no evidence is given as to that rate, the presumption is that the legal rate was in effect.

It will be seen that the Act of June 1, 1915, P. L. 685, held unconstitutional in Pennsylvania Co. v. Phila., 262 Pa. 439, did not cover all phases of the question of compensation for delay, but attempted to allow interest on the damages caused by the taking, without considering whether the owner named an exorbitant value for his land, or stubbornly refused to come to an agreement as to what should be paid him, or was otherwise responsible for the delay.    We held the act to be special legislation applying to municipalities only.    The court below declined to affirm the defendant's sixth point construing this act, and properly did so.    The court was asked to say: "Interest should not be allowed in this case, inasmuch as the so-called Interest Act of June 1, 1915," is unconstitutional. This was in direct conflict with the law as it has always existed in reference to the question of compensation for delay, measured by a rate of interest; and the practical effect of the point was to deprive the plaintiff of this law-

ful right.   Moreover, in refusing the point, the court did not read it to the jury; they were instructed in substantially the same language used by the trial court in Hirsch v. North Braddock Borough, 252 Pa. 22, and it was held to be consonant with the right of the owner to recover compensation for delay.   The appellee did not name an exorbitant price, or do anything to delay the settlement of her claim; as no rate of interest was submitted at the trial, she was entitled to the legal rate as damages, under the authority of Wayne v. Penna. R. R. Co., and the other cases noted.   Under these facts, the act of assembly, if constitutional, gave the appellee no greater right to compensation for delay than did the law as it stood before the act was passed, and the jury was instructed to return damages in terms as the law thus stood.   Had the point been read to the jury and denied, thereby impliedly sustaining its constitutionality, the effect would have been to instruct the jury on the law as we had previously declared it to be—that in condemnation cases, unless cause be shown to the contrary, the landowner is entitled to compensation for delay in payment, measured by an interest rate.   The rule of law was not disturbed by an act declared unconstitutional, and the jury had before it only this rule of law.   The appellant's case was in no wise prejudiced by the refusal to affirm this point.

The court did not abuse its discretion when it refused to grant the motion for a new trial for the reasons there assigned.   We have frequently said this court will not sustain an assignment complaining of such refusal unless the record shows a manifest abuse of discretion.

This disposes of all the assignments of error and the judgment is affirmed.