Frontage, Inc., Appellant, *v.* Allegheny County.

Argued March 15, 1960.   Before Jones, C. J., Mus-
manno, Jones, Cohen, Bok and Eagen, JJ.

*Alexander Unkovic*, with him *William G. Boyle, Edward P. Good*, and *Kountz, Fry & Meyer*, for appellant.

*Francis A. Barry*, First Assistant County Solicitor, with him *Maurice Louik*, County Solicitor, for appellee.

OPINION BY MR. JUSTICE COHEN, June 3. 1960:

This is an appeal from the judgment of the court of common pleas awarding the appellant, Frontage, Inc., $9,523.43 in a condemnation proceeding.

On November 8, 1956, the Board of County Commissioners of Allegheny County condemned in fee simple certain property owned by Frontage, Inc., situated in Moon Township, for the purpose of establishing and maintaining thereon air navigation and terminal facilities. Said property consisted of 8.859 acres, immediately adjacent to the parking lot of the Greater Pittsburgh Airport, having on one side a road frontage on the Airport Parkway of 1080.29 feet and also having on the opposite side a frontage of 988.30 feet on an improved highway, Coraopolis and Stevensons Mill Road. The average depth of the property between the two roads is in excess of 300 feet. The only building on the property was a two-story frame garage.

Viewers were appointed and awarded damages to Frontage, Inc., in the sum of $13,150 from which award both parties appealed to the lower court.

The two experts for appellant gave their opinions of the fair market value of the property at the time of

taking as $50,000 and $58,000. The experts for the appellee County of Allegheny gave their opinions as $7,500 and $7,800 at the time of taking. The jury returned a verdict in favor of Frontage, Inc., in the amount of $9,523.43. This amount apparently included detention damages at three percent interest. Appellant filed a motion for a new trial which was denied by the court *en banc*. Judgment was thereupon entered on the verdict and this appeal followed.

Appellant sets forth several reasons why the court below should have granted a new trial. It contends initially that the trial court erred in permitting cross-examination of appellant's witnesses concerning a separate action in the United States District Court and then compounded this error by refusing to permit redirect examination by the appellant of these same witnesses in order to clarify the matter. It contends further that the court committed error in its charge to the jury concerning the rate of interest for detention damages and in its characterization of expert witnesses; that considering the disparity between the awards of the viewers and the jury and the court's confusing instructions to the jury, it erred in refusing appellant's new trial motion; and that appellant's action was prejudiced by the trial judge's remarks addressed to appellant's counsel in the jury's presence.

In order to adequately dispose of the first issue raised, it is necessary to briefly set forth the factual background surrounding the litigation in federal court toward which inquiry was directed by the appellee. Sometime in August, 1955, the Governor and the Secretary of Highways indicated that they intended to designate the Airport Parkway as a limited access highway, under the provisions of the Limited Access Highways Act, Act of May 29, 1945, P. L. 1108, §§1-15, as amended by the Act of June 10, 1947, P. L. 481, §1; Act of May 31, 1957, P. L. 234, No. 111, §1, 36 PS

§§2391.1-2391.15. If such designation had been made, access to the Airport Parkway would have been cut off for the appellant's property. Claiming that such action by the state officials would deprive appellant and others similarly situated of their property without due process of law, since the Act allegedly did not provide compensation for loss of access to the highway, the aggrieved parties brought an action in the United States District Court seeking injunctive relief and a judgment declaring the aforementioned statute unconstitutional. The culmination of that particular phase of the extended litigation in both state and federal courts which has been generated by this controversy was the decision in *Martin v. Creasy*, 360 U. S. 219, 79 S. Ct. 1034 (1959). See also *Creasy v. Lawler*, 389 Pa. 635, 133 A. 2d 178 (1957).

At the trial of the present action, the president of the appellant corporation, called by the appellant as a neighborhood witness and majority stockholder to testify to his opinion as to the market value of the condemned property at the date of taking, was subjected to extended cross-examination, over vigorous and continued objections, concerning the suit in federal court which had been decided the previous day by the Supreme Court. This questioning occupies six pages of the record, half of the space devoted to cross-examination of the witness. The line of inquiry had but one clear purpose—to indicate to the jury that appellant corporation, by bringing the equity suit, had admitted that it had already lost its access to the Airport Parkway and that by losing the case in the federal court no damages would accrue for the deprivation of the access. This was, of course, incorrect and could not help but prejudice the appellant's action.

Appellee county, in its brief, has strenuously contended that this line of inquiry was relevant because "It is obvious that the plaintiff [appellant], before

the Board of Viewers and before the jury, predicated its whole theory of damages in this case on free access to the Airport Parkway." And well it might—*it had such access as of the date of taking.* It is a fact that at the date of taking, at the date of trial, and even up to the present time the Airport Parkway has not been officially designated a limited access highway pursuant to the 1945 Act. To do so, the Secretary of Highways, after submitting a plan to the Governor for his approval, must file the plan with the recorder of deeds in the proper county. Such action has never been taken. That the Parkway has not been declared a limited access highway to this day is the strongest indication that statements by public officials do not always bear fruition. Moreover, the fundamental principle of the law of eminent domain is that market value is determined upon the date of the taking. Whether some public official will, at some future time, carry out his previously stated intention to limit a property owner's freedom to use his land can have absolutely no effect on a condemning body's duty to adequately compensate the owner for a complete taking of his land. Over the strong objection of the appellant, however, counsel for the appellee was permitted to propound to witness Cummiskey a hypothetical question based upon a completely non-existent state of facts and to obtain from him the highly damaging admission that without access to the Parkway, the property had a market value of only half as much as the amount to which the witness had previously testified. A hypothetical question is only proper when based on an assumed state of facts which the evidence tends to establish. Cf. *Bowles v. Pittsburgh,* 343 Pa. 39, 20 A. 2d 783 (1941). Reference to possible loss of access in the future was highly misleading, speculative and designed to confuse the jury. To allow inquiry into such an unrelated matter as the suit in federal court would permit condemning bodies

to depreciate the market value of property prior to the actual taking simply by issuing or having issued a threat to condemn or a threat to limit the property's access to an abutting highway. Cf. *Westinghouse Air Brake Co. v. Pittsburgh*, 316 Pa. 372, 379, 176 Atl. 13 (1934).

The cases cited by the appellee for the proposition that such inquiry was proper cross-examination for the purpose of attacking the witness' credibility and as an admission are not in point. *Commonwealth, by Truscott, et al. v. Binenstock*, 358 Pa. 644, 57 A. 2d 884 (1948) ; *Commonwealth v. Zervas*, 302 Pa. 510, 153 Atl. 767 (1931) ; *Bizich v. Sears, Roebuck*, 391 Pa. 640, 139 A. 2d 663 (1958). Equally inapposite is *Morse Boulger Destructor Company v. Arnoni*, 376 Pa. 57, 101 A. 2d 705 (1954), cited by the court below as authority for permitting the line of inquiry indulged in here. In that case, as appellee itself points out, "in which the existence of a partnership relationship was denied by the defendant, plaintiff was allowed to cross-examine the defendant by confronting him with an answer filed in another case by which a partnership relationship was admitted. This was offered . . . for the purpose of impeaching the witness."

In each of these cases, the prior statement or admission by the witness was directly contradictory to his current testimony. In the instant case that simply is not so. Witness Cummiskey, for the appellant, did not deny that he was the plaintiff in the federal suit nor allege that appellant's access had been cut off and then in the present proceeding testify to the contrary. The complaint in the federal suit alleged that appellant had been threatened with the potential application of the Limited Access Highways Act to its property and that such application without the payment of compensation would constitute an unconstitutional taking of property without due process of law. Rather than al-

leging that it had no access, appellant's complaint alleged exactly the opposite—that it indeed had access. Not by even the most strained interpretation can such allegations be regarded as prior inconsistent statements or admissions contradicting the witness' present testimony.

Not satisfied with his prior prominent injection of this irrelevant issue into the case, counsel for the appellee returned to it later when cross-examining the appellant's real estate expert. After tracing the same ground as he had previously covered with witness Cummiskey, counsel asked the following question: "And, therefore, there was a cloud in this title at the time of this condemnation? A. Yes, sir." The erroneous, misleading and prejudicial use by the appellee of the technical legal phrase "cloud on title" when referring to the threatened declaration of non-access by the Secretary of Highways, which was later repeated by the trial judge in his charge to the jury,[1] was serious enough in and of itself, to require a new trial. This Court had occasion in *Octoraro Water Co. v. Garrison*, 271 Pa. 421, 427, 114 Atl. 638 (1921), to define "cloud on title" as a title or encumbrance apparently valid, but in fact invalid. If the asserted title, against which equitable relief is normally sought, is of such a character that

---

[1] In ruling on appellant's requested third point for charge, the trial judge stated to the jury, "At the time of the taking on November 8, 1956, plaintiff had a clear and positive access to the Airport Parkway, along the front of the Parkway, and also a clear and positive access to the Coraopolis Stevensons Mill Road. Well, they did have access at that time but it seems there was some dispute about it at that time as to whether the Parkway should be a free road, used for people to go back and forth or not, and the defendant claims that was a cloud, that means that was some drawback on the plaintiff's title, because he wouldn't be able to get out on the road. That hadn't been determined at the time, but it had been discussed at that time, but now they can get out, at least I understand that they can."

it would necessitate the true owner of the property to produce his own title in order to establish a defense, it constitutes a cloud which the owner has a right to have removed. This definition, universally adopted, leaves no room for the inclusion of *threatened* action which might, if and when consummated, produce an actual cloud on the owner's title to his property. It is impossible to contemplate a suit in equity aimed at removing from a particular property a "cloud" created by a statement by the Secretary of Highways that at some future time he intends to declare the highway upon which the property abuts non-access. Since no cloud was actually created, it was fundamental error for the court below to permit this line of questioning and then to reiterate to the jury appellee's erroneous argument. Nor is it relevant that the witness admitted that there was a "cloud on title." If counsel could make such an error, we can expect no more from the non-lawyer witness. The effect of all of this upon the jury is impossible to ascertain, but its tendency was to leave the distinct impression with them that the appellant's title was impaired and thus that its property was worth only a fraction of the value attributed to it by appellant's witnesses.

It is true, as we said in *Black v. Troutman,* 385 Pa. 138, 141, 122 A. 2d 201 (1956), that an erroneous statement by the trial court, when adequately and distinctly corrected at a later point, will not serve as the basis for a reversal. Here, however, the admission by appellee's counsel and the judge's affirmance of appellant's point for charge that it had access at the date of taking were not sufficient to overcome the strong potential prejudice of the extended inquiry concerning the federal suit. The damage had already been done.

Inasmuch as the case must be retried, we deem it appropriate to briefly discuss some of the other matters raised so that the new trial may proceed without

error. Where no evidence is presented by the condemnor to indicate that there is a normal commercial rate of interest during the detention period which differs from the legal rate of six percent, the court should properly charge that there is a presumption that the normal commercial rate during the detention period is the legal rate and that the amount of detention money, if any, to be awarded should be on the basis of such legal rate of interest. *Waugh v. Commonwealth,* 394 Pa. 166, 175, 146 A. 2d 297 (1958).

In regard to the trial judge's charge to the jury, we need only refer the court below to our decision in *Knight v. Allegheny County,* 371 Pa. 484, 92 A. 2d 225 (1952). While a trial judge is accorded a certain amount of leeway in commenting upon the evidence and in properly cautioning the jurors that certain witnesses have an interest in the outcome of the case, he may not so disparage all of the witnesses, both lay and expert, that the jurors are thereby encouraged to disregard all of the evidence and arrive at a determination by guesswork. If all expert testimony is so belittled in a proceeding wherein the only evidence consists of the opinions of experts, such a result is invited. Nor is it wise to refer to the witnesses as "my good friends," nor to suggest to the jurors that *very often* juries have disregarded all of the evidence presented and arrived at a figure by saying to themselves, "well, let's add up all the figures and let's divide them by four." The common sense of laymen cannot be relied upon to determine the value of a piece of real estate. "It need scarcely be said that juries are not to 'guess' but to weigh the testimony intelligently and decide the issue in accordance with the law and the evidence." *Knight v. Allegheny County,* supra, at 487.

The court's charge, in a condemnation proceeding, must also instruct the jury that the basis for an award is "fair market value," not "value," "worth," or some

other commonplace expression. It is a precise legal phrase which must be used and adequately defined so that the jury understands its meaning. It must be pointed out clearly that fair market value is the price a willing purchaser would pay to a willing seller as distinguished from a forced purchase or sale.

In regard to the use by the appellee county of the appellant's capital stock report for the purpose of impeaching the credibility of witness Cummiskey, we wish to point out that the authority relied upon for the introduction of this evidence, *Graham Farm Land Co. v. Commonwealth,* 363 Pa. 571, 70 A. 2d 219 (1950), has been appropriately limited to its peculiar facts by both *Olson & French, Inc. v. Commonwealth,* 399 Pa. 266, 160 A. 2d 401 (1960) and *B. & K., Inc. v. Commonwealth,* 398 Pa. 518, 159 A. 2d 206 (1960). We interpret the language used in Section 731 of The Fiscal Code, Act of April 9, 1929, P. L. 343, art. VII, §731, added June 6, 1939, P. L. 261, §9, as amended July 9, 1941, P. L. 305, §1; March 6, 1956, P. L. (1955) 1218, §2, 72 PS §731, to mean "official purposes" *of the Commonwealth.*[2] Since the condemnor in this case is the County of Allegheny, such introduction is improper.

In passing, we need comment only briefly on the argument by appellant that the remarks of the trial judge prejudiced his case. We have closely examined the record and the charge and we conclude that the so-called "gentle bantering of the trial judge, which involved both counsel in this case" was both unnecessary and often uncalled for under the circumstances. It should suffice to reiterate the admonition echoed by

[2] "§731. *Confidential Information*

"Any information gained by any administrative department . . . as a result of any returns . . . required . . . under the statutes of the Commonwealth imposing taxes . . . for State purposes . . . shall be confidential except for official purposes. . . ."

Justice KEPHART in *Fischer v. Commercial National Bank,* 321 Pa. 200, 201-202, 184 Atl. 57 (1936). "The trial judge should use only such language as is essential to the requirements of the situation and should not unnecessarily belittle counsel's argument or cast unwarranted reproaches on him. In the eyes of the jury, counsel and client are so closely identified that a trial judge's belittling or apparent belittling of counsel is often prejudicial to the client."

Judgment reversed and a new trial granted.