Wolf *v.* Commonwealth, Appellant.

Argued January 12, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused May 24, 1961.

*Wanda P. Chocallo*, Assistant Attorney General, with her *Anne X. Alpern*, Attorney General, for appellant.

*Abraham L. Freedman*, with him *Michael L. Temin, Louis J. Goffman*, and *Wolf, Block, Schorr & Solis-Cohen*, for Commonwealth, appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, May 2, 1961:

On December 26, 1956, the Commonwealth of Pennsylvania, acting through the Department of Forests and Waters, condemned for state park purposes certain properties located on 5th, 6th, Commerce and Cuthbert Streets in Philadelphia of which Robert B. Wolf was the record owner.

On January 23, 1957, a board of view was appointed to assess the damages to these properties; after hearing, the board on April 25, 1958 awarded Wolf $415,-800, an amount which included damages as compensation for delay in payment. On May 23, 1958, Wolf appealed to the Court of Common Pleas No. 2 of Philadelphia County alleging that the board's award was in-

adequate. The matter was then heard de novo before President Judge SLOANE and a jury and, at trial, the court submitted to the jury two questions: (1) the value of Wolf's properties at the time of taking and (2) whether Wolf was entitled to any detention damages. The jury by its verdict fixed the value of these properties at the time of taking at $355,000 and found that Wolf was not entitled to any detention damages.

Wolf then filed motions for a new trial and for judgment n.o.v., the latter motion being premised on the ground that the trial court on the state of the record should have directed the jury to award detention damages at the rate of 6% per annum. The court below refused the motion for a new trial, granted the motion for judgment n.o.v. and entered judgment in favor of Wolf and against the Commonwealth in the amount of $421,917.50. The amount of this judgment was composed of the value of the properties as fixed by the jury—$355,000—together with detention damages of $66,917.50. The judgment as entered by the court awarded detention damages from the date of the taking up to the date of the entry of judgment (February 17, 1960) not up to the date of the jury's verdict (November 5, 1959) and furthermore, provided for interest at six (6%) percent per annum from the time of its entry to the time of final payment.[1] From that judgment the Commonwealth has taken this appeal.

The Commonwealth contends: (1) that Wolf forfeited any right to detention damages by reason of excessive and unreasonable demands on his part; (2) that, even if Wolf were entitled to detention damages,

---

[1] In his opinion for the court en banc, President Judge SLOANE stated that the provision as to interest "was in part excessive since [Wolf] would thereby receive interest on detention money in addition to detention damages with respect to the valuation." It should be noted that the Commonwealth paid Wolf $355,000 on May 26, 1960.

he could not claim such damages beyond the date of the jury's verdict; (3) that the Commonwealth is immune from the payment of any interest upon the judgment.

In *Whitcomb v. Philadelphia*, 264 Pa. 277, 107 A. 705, we said (p. 284): "When land is taken under the power of eminent domain, the owner thereof acquires the right to its value immediately upon appropriation. Until that value has been definitely ascertained, it is called damages, not a debt due; but when ascertained it relates back to the time of taking, and the owner is entitled to compensation for delay in its payment, unless just cause be shown to the contrary. [citing cases]". In *Fidelity-Philadelphia Trust Company v. Commonwealth*, 352 Pa. 143, 145, 42 A. 2d 585, Justice (now Chief Justice) JONES, speaking for this Court, stated: "*Prima facie, an owner of private property which is condemned and appropriated for public use is entitled to damages for delay in payment of the sum due as reasonable compensation for the property taken.* [citing cases]. The right to damages for delay in payment in such cases may, of course, be lost if the cause for the delay is the fault of the property owner. Such fault may be evidenced by an unconscionable or excessive claim of damages by the owner of the property or by his refusal, as otherwise indicated, to negotiate for the amicable settlement of the property damages. *'But the law [does] not presume any such conduct on his [the owner's] part'*: Wayne v. Pennsylvania Railroad Company, supra, at p. 515. There is no evidence in this case of any unwillingness or refusal on the part of the plaintiff to arrive at an amicable adjustment of the damages nor of any effort by either party to that end. In that situation, the parties presumably being content to have the damages determined by appropriate legal proceedings, the owner's right to damages for delay in payment remains unimpaired. Cf. Hoffman v. Philadelphia, 250 Pa. 1, 5-6, 95 A. 322.

"Such being the law in general, is damage for delay in payment compensable when the Commonwealth is the condemnor? We think it is. Loss of use of the property or its proceeds because of delay in payment is an element of damage the same as is the value of the appropriated property. The law so recognizes: see cases cited supra. The Constitution of the State requires that just compensation be first made or secured for the taking of private property for public use. Where that is not first done, i.e., at the time of the taking, the integrity of the constitutional requirement can be respected only by including in the award for the value of the property taken such damage as there may have been (within legally prescribed limits) due to the delay in payment for the property."

The Commonwealth takes the position that Wolf, by reason of his excessive and unreasonable demands, has forfeited any right to detention damages. Of course, if there was *proof* of such excessive and unreasonable demands, it would work a forfeiture of Wolf's right to detention damages: *Springer v. Allegheny County*, 401 Pa. 557, 567, 165 A. 2d 383 and cases therein cited.

The Commonwealth argues that it proved that Wolf's demands were unreasonable and excessive in two ways: (1) that the valuations placed upon the property by Wolf's real estate experts were unreasonable and excessive and that Wolf was bound by such valuations[2] and, (2) as stated in the Commonwealth's brief, the "[c]ondemnee refused to accept less than $750,000 in settlement of his claim. Immediately prior to trial, it was indicated that he [the condemnee] might consider accepting an unnamed sum exceeding $600,000.

---

[2] In this connection it should be noted that Morris Wolf—one of the actual owners—testified but his testimony disclosed no demand nor did it equate the real estate experts' valuations with any demand he made.

During trial, attempts by the trial judge to effect settlement for a lesser sum were rejected by [Wolf]".

As to the Commonwealth's first argument the record does not disclose *any* testimony whatsoever as to what Wolf had demanded from the Commonwealth for these properties. If Wolf did make a demand or demands of any representative of the Commonwealth, why did the Commonwealth not call such representative to prove the nature of such demand or demands? The Commonwealth elected not to present such proof. In lieu thereof, the Commonwealth takes the position that, because the valuations placed by Wolf's real estate experts were approximately $400,000 greater than the valuations placed by the Commonwealth's experts, Wolf was bound by such valuations of his experts and the jury could have found that his demand or demands equated the valuations placed by the real estate experts and, therefore, were unreasonable and excessive. *Springer,* supra, completely and effectively shatters this argument (p. 569) : "Obviously, he [the owner] could not be found to have been exorbitant or unreasonable in his demands because of the valuations placed upon it [his property] by the expert witnesses he produced at trial". This phase of the Commonwealth's argument is without merit.

The Commonwealth's second argument is not only without merit but somewhat amazing. It is axiomatic that on appeal only that which appears of record is subject to argument by counsel or to consideration by the appellate court. *This phase of the Commonwealth's argument is completely and entirely based upon matters which do not appear upon the record.* There is not a scintilla of evidence that Wolf refused to accept less than $750,000, that at trial Wolf indicated that he might accept an unnamed sum in excess of $600,000 or that Wolf rejected any attempts on the part of the trial judge to negotiate a settlement. Not only can we not

consider such an argument but such an attempt to go outside the record in this matter is not to be countenanced: *Daniels Company, etc. v. Nevling,* 385 Pa. 276, 122 A. 2d 814.

On the state of the record the court below erred in permitting the jury to pass upon the question of detention damages. Wolf had a prima facie right to recover detention damages and the record is bare of proof of any conduct upon his part which could result in a forfeiture of his right to such damages. In the absence of any such evidence, the jury was not in a position to deny detention damages and, in entering judgment n.o.v., for this reason, the court below justifiably corrected its own error.

More serious are the questions of the propriety of the court's action in allowing detention damages to the date of the judgment rather than the date of the jury's verdict and the allowance of interest against the Commonwealth until the date of final payment.

The Constitution of Pennsylvania provides that *"just compensation* be first made and secured for the taking of private property for public use". (Emphasis supplied). Implicit in the integrity of this constitutional requirement is an obligation upon the part of the Commonwealth to pay such just compensation with as much expedition and with such absence of delay as the circumstances will permit. If the period from the time of the taking of the property to the date of receipt of compensation therefor be unduly extended and if the delay in payment is not due to the fault of the person whose property has been taken, then the compensation to be *just* should include not only the value of the property at the time of taking but also damages during the period within which payment of such value is withheld.

Where the condemnor of property is a body other than the Commonwealth, *just compensation* is assured

not only by the award of detention damages[3] from the date of the taking of the property to the date of the award but also by the allowance of interest from the date of the award to the date of payment.[4] However, where the condemnor is the Commonwealth we have held that the Commonwealth is immune from the payment of any interest on the award (*Culver v. Commonwealth*, 348 Pa. 472, 35 A. 2d 64),[5] although recognizing the liability of the Commonwealth for detention damages (*Waugh v. Commonwealth*, supra; *Fidelity-Philadelphia Trust Co. v. Commonwealth*, supra).

As a result of our prior decisions in the field of eminent domain the Commonwealth is placed in a favored status so far as the constitutional requirement of "just compensation" is concerned and the Commonwealth, *unlike all other condemnors*, does not have to pay the person or persons whose property has been taken any compensation for any delay in payment *following* the award. By way of illustration, the instant jury award was made on November 5, 1959 but the Commonwealth did not pay any part of such award until May 26, 1960, although the jury had fixed the amount of the basic, as distinguished from the detention, damages at a figure in accordance with the Commonwealth's estimates. Had these properties been taken by a condemnor other than the Commonwealth, the property owner would have received upwards of

---

[3] Even though detention damage is not interest, such damage—in the absence of any evidence to justify a lower figure—is computed at the regular interest rate: *Frontage, Inc. v. Allegheny County*, 400 Pa. 249, 259, 162 A. 2d 1; *Waugh v. Commonwealth*, 394 Pa. 166, 175, 146 A. 2d 297.

[4] Act of April 25, 1929, P. L. 777, No. 328, §1, as amended by the Act of March 26, 1931, P. L. 10, No. 7, §1, 26 PS §43.

[5] Cf: *Lichtenstein v. Pennsylvania Turnpike Commission*, 398 Pa. 415, 158 A. 2d 461; *Treser v. General State Authority*, 190 Pa. Superior Ct. 490, 154 A. 2d 325.

$10,000 by way of interest on the award, whereas the Commonwealth, by reason of a judicially created immunity from payment of interest, seeks to be relieved from paying any compensation whatsoever during this period.

Many years ago this Court stated that "The compensation (for the taking of land) must be a *just one at the time its amount is settled . . . .*": (Emphasis supplied) *Klages v. Philadelphia and Reading Terminal Company,* 160 Pa. 386, 390, 28 A. 862. The constitutional mandate of "just compensation" should be applied regardless of the status of the condemnor and the person whose property has been taken should receive *identical* treatment at the hands of *any* condemnor. The only sensible, logical and equitable manner in which "the integrity of the constitutional requirement" can be maintained is to require that the Commonwealth pay interest on the amount of the award from the date of the award until the Commonwealth has actually paid the value of the property taken.[6]

To require the Commonwealth to pay interest until final payment of the award will impose upon it no unreasonable or wrongful burden[7] and, at the same time, such a requirement will secure equal justice to the condemnee and full compliance with both the letter and spirit of the constitutional guarantee.

In the instant factual situation, the jury made its award on November 5, 1959. Approximately three months later, the court entered a judgment n.o.v. which

---

[6] To the extent *Culver v. Commonwealth,* 348 Pa. 472, 35 A. 2d 64, holds to the contrary, it is overruled.

[7] The Commonwealth can protect itself by paying into court a substantial amount of the value of the property at the time of its taking as reflected by the opinions and valuations placed on such property by real estate experts selected by the Commonwealth and thus can decrease the detention damages on interest which it may eventually have to pay.

had the effect of adding to the jury's award of the value of the properties damages for detention up until the date of the entry of the judgment. What the court did was to remold the jury's award and to enter a judgment expressive of such remolded award, and through such court action the condemnee was awarded both the value of the properties as found by the jury plus detention damages. Under these circumstances, the court acted properly in calculating the detention damages to the date of the entry of its judgment. Upon such judgment interest should run until the date of final payment thereof by the Commonwealth to Wolf.

Judgment affirmed.

Mr. Justice COHEN dissents from that portion of this opinion which allows interest on the judgment.

———

OPINION BY MR. JUSTICE BELL CONCURRING IN PART AND DISSENTING IN PART:

It has always seemed to me to be unfair and unjust that in these modern times the Commonwealth should be allowed to retain *all* the attributes, privileges and prerogatives of an ancient Sovereign. In particular I believe that the Commonwealth should have to pay interest on just debts and just claims (including tax refunds) exactly the same as individuals do. However, this Court has often decided to the contrary. Moreover this Court specifically decided in the recent case of *Culver v. Commonwealth,* 348 Pa. 472, 35 A. 2d 64 (1944), that the Commonwealth did not have to pay interest in an eminent domain proceeding. That case enunciated no new rule or principle; that rule or principle has, until today, always been the law. When the majority decides to overrule *Culver v. Commonwealth* (as it has), it should not do so under the misapprehension that that case established a new principle of

law, or that there has been any change of circumstances since 1944 which justifies an overruling of that case, or merely of that case.

The question of detention of damages and of interest disturbs me. The Courts have remedied part of the injustice which usually results from the exemption of a Sovereign from interest on just claims, by allowing so-called "detention damages". "Detention damages" in effect (although in a disguised form) really amount to interest. However, until today, detention damages, if allowable at all, were allowed and assessed by a jury from the time of the taking *until the jury's award*. The majority Opinion now changes this well established law and allows a Court not only to overrule the findings of a jury but also to calculate and assess detention damages to the date of the entry of the judgment in favor of the property owner. I know of no authority or reason which justifies this change in the law.

The majority Opinion then further changes the law by allowing *interest* on the judgment until the date of final payment by the Commonwealth, i.e., interest on interest. Not only is the allowance of interest against the Commonwealth contrary, as above stated, to well settled, ancient and recently reiterated principles of law, but the allowance of interest on interest (so-called "detention damages") is not only unfair but is also unrealistic so far as the Commonwealth is concerned. If interest is to be allowed against the Commonwealth from the time of entry of the judgment, it should be allowed only where and to the extent that there has been an *unreasonable* delay in payment of the judgment.*

---

* The State, unlike an individual, has to appropriate by Legislative action money for payment of claims. Even if no allowance is made for the usual slow bureaucratic processes, it is unrealistic to compel the payment of interest by the Commonwealth for and during the time *reasonably* required for State action and payment.