## Scavo v. Pennsylvania Turnpike Commission

*Joseph E. Gallagher* and *O'Malley, Morgan, Bour & Gallagher*, for plaintiffs.

*John A. Morano*, for defendant.

NEALON, J., November 21, 1962.—On January 18, 1954, the Pennsylvania Turnpike Commission condemned certain lands of Angelo Scavo and Frank Scavo in Moosic Borough, Lackawanna County, consisting of 2.57 acres actually condemned and an additional .50 acre isolated and rendered useless thereby, or a total area of 3.07 acres. The Scavos had operated a drive-in theater on part of an area covering 11.90 acres which, after condemnation was reduced to 8.83 acres. The Turnpike Commission and the owners were unable to agree on damages and on August 20, 1959, on petition of the commission, a board of viewers was appointed by this court. After protracted hearings, the viewers filed their report on February 7, 1962, and placed a value of $27,000 on the lands acquired by the commission. Both the owners and the commission filed exceptions to the report of viewers, but the commission's exceptions were withdrawn on March 16, 1962. The gist of the owners' exceptions was that the viewers did not make a specific finding as to whether detention damages were or were not included in the award of $27,000. This court, in an opinion by Hoban, P. J., dismissed the exceptions, pointing out that detention damages for delay in payment may be an item for consideration, but if the owners are dissatisfied by the failure of the viewers to give them satisfactory damages, the remedy is by appeal. The owners promptly appealed from the report of viewers and the matter was set down for trial on September 10, 1962, at which time the parties agreed

of record to have the case tried by Nealon, J., sitting without a jury, and stipulated that the trial judge would hear the case as if in trespass, without making findings of fact and conclusions of law under the Act of April 22, 1874, P. L. 109, sec. 2, as amended by Act of July 10, 1935, P. L. 640, sec. 1, 12 PS §689. The parties requested the trial judge to make (a) an award as to the market value of the property condemned, and (b) a specific finding as to the owners' entitlement, if any, to detention damages.

After a careful consideration of the evidence in this case, the court awards the property owners (a) $26,-000, as representing the market value of the property condemned, and (b) $13,792.11, as representing detention damages at the rate of six percent per annum, from January 18, 1954, to November 21, 1962.

Inasmuch as counsel for the Turnpike Commission vigorously pressed the argument that the property owners forfeited their right to detention damages, the following observations are being made. The value placed on the area condemned by the owners and their witnesses cannot be considered arbitrary or unreasonable because the question of value in this case involved out-of-the-ordinary, if not unique, considerations. Unlike the usual condemnation of residences, commercial buildings or unimproved rural land wherein market value is more readily gauged and the reasonableness of an owner's demand more easily determined, this case concerned the taking by the Turnpike Commission of the only land available to the owners for the expansion and enlargement of their theater facilities. That impairment of future expansion of a business, which may make it of less value to a likely purchaser, is a factor to be considered in estimating the value of the property condemned, was established in Stevenson v. East Deer Township, 379 Pa. 103 (1954). It is understandable, therefore, that there may be wide variances even

among real estate experts as to the market value of the land condemned. Indeed, our Supreme Court has recognized the ". . . tremendous diversity of opinion that might honestly and justifiably exist in the minds of appraisers and viewers": Vaughan v. Commonwealth, 407 Pa. 189 (1962). Moreover, this property was condemned and appropriated by the Turnpike Commission on January 18, 1954. Subsequently the parties were unable to agree on the amount of damages due the owners. Although either party had the right to petition for the appointment of viewers, the commission did not make such a request of the court until August 25, 1959. Whatever delay resulted thereafter cannot be attributed to the plaintiffs. As owners, they are entitled to damages for delay in payment of the sum due as reasonable compensation for the property taken, unless the cause for the delay is attributable to them. We cannot and will not, under the circumstances of this case, deny detention damages to the property owners.

Now, November 21, 1962, the court returns a verdict in favor of the plaintiffs in the amount of $39,792.11.

### On Exceptions to Adjudication

Before Hoban, P. J., and Robinson and Nealon, JJ. sitting en banc.

NEALON, J., December 7, 1962.—Defendant, Pennsylvania Turnpike Commission, has filed exceptions to the decision of the trial judge alleging (1.) The decision was against the weight of the evidence and was excessive, and (2.) the court erred in awarding detention damages in the amount of $13,792.11.

The allegation that the verdict was against the weight of the evidence and was excessive deserves but brief comment. Plaintiffs' expert witnesses testified that the market value of the land condemned ranged from $105,000 to $125,000, while defendant's two witnesses placed the value at $12,000 and $15,000. The weight to be given this oral testimony is clearly for the

trier of the facts and there is sufficient evidence justifying the award of $26,000 in this case.

Defendant commission argues more emphatically that plaintiffs forfeited their entitlement to detention damages and, therefore, the award of such damages was erroneous and improper. It is defendant's position that plaintiffs are not entitled to any amount for detention damages because the owners placed an unreasonable and exorbitant value on the property condemned.

Prima facie, an owner of private property which is condemned and appropriated for public use is entitled to damages for delay in payment of the sum due as reasonable compensation for the property taken. The right to damages for delay in payment in such cases may, of course, be lost if the cause for the delay is the fault of the property owner. Such fault may be evidenced by an unconscionable or excessive claim of damages by the owner of the property or by his refusal, as otherwise indicated, to negotiate for the amicable settlement of the property damages: Wolf v. Commonwealth, 403 Pa. 499 (1961); Fidelity-Philadelphia Trust Company v. Commonwealth, 352 Pa. 143 (1945).

In Wayne v. Pennsylvania Railroad Co., 231 Pa. 512 (1911), our Supreme Court reasoned:

"If he (the owner) has disappointed the law and stubbornly refused to name an amount which he would be willing to accept as compensation; or in the same spirit, has been extortionate in his demands, and has named a sum exorbitant and unreasonable, a jury might well find that he has himself unjustifiably provoked the delay and deny him all damages therefore."

In Kelly v. Allegheny County Redevelopment Authority, 407 Pa. 415 (1962), the Supreme Court affirmed the judgment of the lower court on the opinion of Judge S. Frank McKenna, Jr., as reported in 26 D. & C. 2d 662, which stated:

"The principle to be deducted from the cases is that the jury may withhold detention money if it finds that the owner has been unreasonable in his demand and that the owner's testimony as to value of the property may, where it is considerably higher than the amount fixed by the jury, furnish to the jury a basis for a finding that an unreasonable demand had been made."

As was pointed out in Moffat Appeal, 400 Pa. 123 (1960):

". . . the condemnor will pay detention damages for the full period between the taking of the property and the final award or jury verdict unless the condemnee loses his claim or any part thereof due to his own delay. The rule applies regardless of when the commission is convened, so that even afterwards, if the property owner stalls or is uncooperative, he may lose the right to claim detention damages in whole or in part. Desirably, the net result is that the condemnor is under a burden to work more rapidly toward a final award so as to keep the detention damages small, and the condemnee is encouraged to be as cooperative as possible so as not to jeopardize his detention claim."

There is nothing in this record, with the exception of the owners' testimony on September 10, 1962, as to the value of their property, showing that they were not ". . . as cooperative as possible so as not to jeopardize his detention claim", or indicating that the delay was attributable to them. On the other hand, defendant commission, although ". . . under a burden to work more rapidly toward a final award so as to keep the detention damages small, . . ." waited approximately five and one-half years from the date of condemnation before petitioning for the appointment of viewers.

Therefore, whether the owners' testimony as to value was so exorbitant and unreasonable as to have caused the delay in payment is for the trier of facts to deter-

mine. The finder of facts in this case has reached a decision awarding detention damages and gave his reasons for so finding. We see no reason to disturb the findings of the trial judge.

Now, December 7, 1962, the decision of the trial judge is adopted as the opinion of the court en banc and affirmed; defendant's exceptions are dismissed and the prothonotary is directed to enter judgment on the decision of the trial judge.