Rednor & Kline, Inc., Appellant, *v.* Department of Highways.

120

Argued November 26, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, O'BRIEN and ROBERTS, JJ.

*Joseph J. Zapitz,* with him *Curtin & Heefner,* for appellants.

*William R. Mosolino,* Assistant Attorney General, with him *Michael R. Deckman,* Assistant Attorney General, *John R. Rezzolla, Jr.,* Chief Counsel, and *Walter E. Alessandroni,* Attorney General, for Department of Highways, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 7, 1964:

On January 11, 1952, the individual appellants, Rednor and Kline, trading as Rednor & Kline, were the owners of a 30-acre tract of land in Falls Township, Bucks County. On that day, the Department of Highways condemned for the construction of a new highway, approximately 3¼ acres out of the owners' total 30-acre property. Thereafter, on December 29, 1954, the individual appellants conveyed the premises and assigned their right to an award in condemnation proceedings to Rednor & Kline, Inc., the corporate appellant. Rednor & Kline, Inc. is a very small closely held corporation which is managed by four persons*—two fathers and two sons.

Proceedings to collect damages for the taking were initiated before a Jury of View. The record before us does not disclose who initiated these proceedings or in whose favor the jury ultimately made an award of $10,-600. The present proceedings, an appeal to the Quarter Sessions Court, which that Court certified to the Common Pleas Court for the purposes of trial, were initiated by both Rednor and Kline, the owners at the time of the taking, and their assignee, the corporation.

The law is clear that the only person entitled to recover damages for a condemnation in eminent domain proceedings is the person who was the owner at the time of the taking. *Smith v. Commonwealth,* 351 Pa. 68, 70, 40 A. 2d 383; *Lakewood Memorial Gardens Appeal,* 381 Pa. 46, 54, 112 A. 2d 135. Therefore, in these proceedings the claimants or plaintiffs should have been from the very start, Jacob Rednor and Harry Kline, individually and as co-partners, trading as Rednor & Kline, or those parties to the use of Rednor & Kline, Inc., a corporation.

---

* The record does not disclose the names of the stockholders.

In the Opinion of the Court below, Judge FULLAM said: "... However, it is stipulated that all of the right, title and interest of the individuals and the partnership, both as to the remaining land and as to the condemnation proceeds, became vested in the corporate plaintiff in 1954, so that to all intents and purposes there is only one plaintiff, Rednor & Kline, Inc."

Since no objection has been made to this by the individual plaintiffs or by the Commonwealth, we intend the corporation whenever we refer to the plaintiff or the claimant or the owner or the appellant.

The trial before a jury in the Common Pleas Court resulted in favor of appellant in the amount of $6,000 —$5,000 of which was for the taking of the land and $1,000 of which was designated as "detention damages." From the Order of the Court below which dismissed its motion for a new trial, Rednor & Kline, Inc., took this appeal.

Although appellant in its motion for a new trial in the Court below alleged as error, inter alia, the inadequacy of the verdict, in the present appeal to this Court it is surprising to note that appellant has abandoned that claim, and *its only claim* for a new trial concerns the question of *detention damages* and the admissibility of certain evidence with respect thereto.

It appears from Judge FULLAM's Opinion that when the matter was before the Jury of View, the parties stipulated that detention damages should not be allowed beyond December 22, 1958. However, at the trial in the Court of Common Pleas, the Commonwealth took the position that appellant, because of its exorbitant and excessive claim for damages in the amount of $106,000, was not entitled to any detention damages whatsoever.

Prima facie, a landowner whose property is taken in eminent domain proceedings is entitled to damages for the value of the property taken and also to "deten-

tion damages," i.e., damages for delay in payment. However, if the Commonwealth proves that its delay in payment for the value of the property taken was the result of an excessive or exorbitant or unconscionable claim by the property owner, the jury can deny the owner any detention damages. *Springer v. Allegheny County*, 401 Pa. 557, 165 A. 2d 383; *Wolf v. Commonwealth*, 403 Pa. 499, 502, 170 A. 2d 557; *Waugh v. Commonwealth*, 394 Pa. 166, 169, 146 A. 2d 297; *Fidelity-Philadelphia Trust Company v. Commonwealth*, 352 Pa. 143, 145, 42 A. 2d 585; *Kelly v. Allegheny County Redevelopment Authority*, 407 Pa. 415, 180 A. 2d 39.

In *Wolf v. Commonwealth*, 403 Pa., supra, the Court, quoting from *Fidelity-Philadelphia Trust Company v. Commonwealth*, said (page 502) : ". . . 'Prima facie, an owner of private property which is condemned and appropriated for public use is entitled to damages for delay in payment of the sum due as reasonable compensation for the property taken [citing cases]. The right to damages for delay in payment in such cases may, of course, be lost if the cause for the delay is the fault of the property owner. Such fault may be evidenced by an unconscionable or excessive claim of damages by the owner of the property or by his refusal, as otherwise indicated, to negotiate for the amicable settlement of the property damages.' . . ."

## Admissibility of D-7 and D-8

In order to prove that the demand of the owner was excessive, the Commonwealth, over the objection of the owner, introduced into evidence two documents, D-7 and D-8. D-7 is, by its clear language, a formal written claim by Rednor & Kline, Inc., for damages in the amount of *$106,224;* it was addressed to the Department of Highways and was produced by it from its files. This paper bears no date, but refers by num-

ber to the condemnation of the subject property and is signed "Rednor & Kline, Inc. [by] Harry Kline, Pres."

Exhibit D-8 is a letter dated October 17, 1956, signed, Willard S. Curtin; it was written on the stationery of Curtin and Heefner, Esquires, who were counsel for the owner at the trial and in the present appeal. The letter referred by number to the same claim as that set forth in D-7. This letter was addressed to the Department of Highways and reads: "Gentlemen: In Re Rednor & Kline v. Penna Dep't of highways—claim #09190-A. Enclosed herewith you will please find a Claim for Damages in reference to the above matter. Yours very truly, Willard S. Curtin." The letter was produced by the Highway Department from its files and was time-stamped as received October 22nd. The Commonwealth also introduced, in connection with plaintiff's claim for detention damages, evidence that by letter dated February 8, 1957, it had made a written offer to the owner in the amount of $5,000. This offer of the Commonwealth, the receipt of which was admitted by the owner, was particularly relevant on the question of detention damages and was undoubtedly admissible for this purpose.

Appellant's arguments as to the inadmissibility of these documents are highly technical. Appellant contends that the written claim of the corporation for damages for the taking of its property which was signed by the President of the corporation and forwarded to the Department of Highways by counsel for the corporation, is not admissible in evidence (a) because there was no evidence that Kline, the President of the corporation, was authorized to execute document D-7, and (b) because the Commonwealth had not properly proved that it had received that document, and (c) since Kline was not a witness, his company's aforesaid

formal claim (D-7) could not be introduced in evidence.

Rednor & Kline, Inc. was, we repeat, a very small corporation, composed of four persons, all of whom were active in the management of its business. These four persons were the two former partners, Rednor and Kline, and their two sons. All decisions in business matters were made by these four persons. Curtin and Heefner were, again we repeat, counsel for the owner both at the trial and in the present appeal. Under all the facts and circumstances hereinabove recited, there is no merit in any of these three contentions of the appellant.

The authority of the President of a *small* corporation, which in this case is run or managed by four persons, to act for the corporation in the situation here involved, should be and will be sustained on the ground of his implied or, as the Restatement (2d), Agency, §8A, calls it "inherent," as well as his apparent authority. *East Girard Savings & Loan Association v. Houlihan*, 373 Pa. 578, 97 A. 2d 23; *Miller v. South Hills Lumber and Supply Company*, 334 Pa. 293, 6 A. 2d 92; *Osborne v. Victor Dairies, Inc.*, 138 Pa. Superior Ct. 117, 10 A. 2d 129; *Blair v. J. R. Andrews, Inc., of Delaware*, 141 F. Supp. 51 (W.D. Pa.); Restatement (2d), Agency, §49, comment c.

As Judge FULLAM well said: "The signature of the president as such, on a document of this kind, would seem to be prima facie evidence of authority, particularly in the case of a small, closely-held family corporation, of the type which customarily acts informally."

In *East Girard Savings & Loan Association v. Houlihan*, 373 Pa., supra, the Court in discussing "apparent authority" said (pages 580, 581): " *'If the principal* puts one into, *or knowingly permits him to occupy, a position in which, according to the ordinary experience and habits of mankind, it is usual for the oc-*

*cupant to have authority of a particular kind,*[*] anyone having occasion to deal with one in that position is justified in inferring that the person in question possesses such authority, unless the contrary is then made known.' O'Donnell v. Union Paving Co., 121 Pa. Superior Ct. 68, 72 (1936), quoting from Restatement, Agency, Section 49, comment b . . . .

". . . 'The authority of an agent of a corporation *may be presumed from his position and the nature of the act.'* . . . ."

Furthermore, after an act of a corporate official who has or is in a position of apparent authority, has or should have become known, failure to promptly disavow or repudiate such action raises a presumption of actual authority or of affirmance and ratification. *Montgomery v. Van Ronk,* 328 Pa. 508, 195 A. 910; *Sud-Rheinische Gesellschaft, M.B.H. v. Rosedale Foundry & Machine Company,* 113 Pa. Superior Ct. 187, 172 A. 405; see also *Gagnon v. Speback,* 383 Pa. 359, 363, 118 A. 2d 744; *National Bank of Fayette County v. Valentich,* 343 Pa. 132, 136, 22 A. 2d 724; *Mahony v. Boenning,* 335 Pa. 210, 214, 6 A. 2d 793; Restatement (2d), Agency, §94. Appellant did not disavow or challenge the authority of its President to make this claim for $106,000 until five years after its claim (D-7) had been presented to the Department of Highways.

Appellant relies on *Olson & French, Inc. v. Commonwealth,* 399 Pa. 266, 160 A. 2d 401, and *B. & K., Inc. v. Commonwealth,* 398 Pa. 518, 159 A. 2d 206, while appellee relies upon *Graham Farm Land Company v. Commonwealth,* 363 Pa. 571, 70 A. 2d 219. Each of these cases involved the question of the admissibility of a corporate capital stock tax return *to evidence the value of taxpayers' land* which was taken

---

[*] Italics throughout, ours.

by condemnation in eminent domain proceedings. The question involved in the instant case is the question of detention damages, not the value of the condemned land, and consequently these cases are clearly inapplicable.

We have considered all of the contentions made by the appellant and find no merit in any of them.

Judgment affirmed.

