Hughes *v.* Commonwealth, Appellant.

Argued April 29, 1964. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Alan L. Ackerman,* Assistant Attorney General, with him *Samuel M. Snipes, John R. Rezzola, Jr.,* Deputy Attorneys General, and *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellant.

*Thomas A. McIvor,* with him *James C. Bowen,* and *Power, Bowen & Valimont,* for appellees.

OPINION BY MR. JUSTICE JONES, July 1, 1964:

On July 15, 1959, the Commonwealth of Pennsylvania, acting through its Department of Highways, condemned for highway purposes a certain property in Bucks County. "The premises in question consisted of a store-warehouse building on a lot about one hundred feet in frontage and two hundred feet in depth on Bristol Pike (Route 13) near Street Road, Bensalem Township [Bucks] County, used in a plumbing supply business. Record title thereof was in the name of Kathleen D. Hughes [Hughes], who was the nominee of John Maneely Company [Maneely], a corporation, whose real ownership was evidenced by an unrecorded deed from Miss Hughes. Actual possession, under a year-to-year lease from Miss Hughes (calling for a monthly rental of $500), was in Eddington Plumbing and Heating Supply Company [Eddington], a corporation, ninety-six or ninety-seven per cent of the shares of stock of which were 'controlled' by John Maneely Company".[1]

A board of view was appointed to assess the damages to the property and it awarded appellees $116,700, which included detention damages. On February 9, 1962, this award was appealed to the Court of Com-

---

[1] From the opinion of the court below.

mon Pleas of Bucks County and, on November 7, 1962, following a jury trial, a verdict was entered in favor of the plaintiff-appellees in the sum of $49,766.72.[2] The Commonwealth then filed a motion for a new trial which was denied on March 15, 1963, and judgment entered on the verdict. It is from this judgment that the instant appeal arises, an appeal which does not contest the basic award but only the amount of detention damages for which the trial court directed a verdict. The thrust of the Commonwealth's argument is that detention damages were forfeited from July 15, 1959, the date of the initial taking, to May 15, 1961, due to the continued occupancy and use of the premises by the former owner.

An owner of private property which is condemned for public use is entitled to damages[3] for any delay in payment of the amount due as compensation for the taking: *Rednor & Kline Inc. v. Department of Highways,* 413 Pa. 119, 196 A. 2d 355; *Fidelity-Philadelphia Trust Company v. Commonwealth,* 352 Pa. 143, 42 A. 2d 585. However, by continuing to receive value from the land, a condemnee may lose his right to such detention damages: *Pattison v. Buffalo, Rochester & Pittsburgh Ry. Co.,* 268 Pa. 555, 112 A. 101. As we stated in *Pattison,* supra, at page 557: "If, after the paper taking, the person continues in actual occupation of the land, receiving therefrom rents, issues and profits, it would be inequitable for him to have this

---

[2] A partial payment of $70,875 had been made by the Commonwealth on August 15, 1961. The jury initially returned a verdict of $105,000 for the value of the premises. This figure was molded by the trial judge by adding a net amount for detention damages, computed at the rate of 6 per cent per annum from the date of the initial taking to the date of verdict, adjusted for time and amount of the partial payment, and deducting the amount of prepayment, a final verdict of $49,766.72 determined.

[3] For a discussion of detention damages in Pennsylvania generally, see: 68 Dick. L. Rev. 55.

benefit and full compensation for delay in payment. . . . The *net income* is, nevertheless, a benefit which the person receives and it is no more than equitable that *its value* should be ascertained by the jury and deducted from the entire compensation for delay." (Emphasis supplied) Thus, a condemnor may be relieved of its obligation to pay detention damages to the extent it can sustain the burden of establishing that the former owner derived value from the property after condemnation: *Pattison,* supra. In the instant case, the trial judge came to the conclusion that there was not sufficient evidence to submit the question of diminution of detention damages to the jury and directed a verdict for the payment of said damages from the date of the taking.

To support its position, the Commonwealth at trial introduced the Hughes-Eddington lease[4] and sought to introduce by Mr. John J. O'Donnell, president of Eddington from January 1961 to date and the director of Maneely in charge of its dealings with Eddington from 1958 to January 1961, certified copies of the federal income tax returns of Eddington for its fiscal years August 1, 1959, through July 31, 1960, and August 1, 1960, through July 31, 1961. The declared purpose of this was to show deductions made therein for rental payments. The court did not allow the returns to be introduced to the jury, indicating that they were not properly identified or explained,[5] but did permit them to be included in the record for appeal purposes. The returns show deductions for "rent" of $31,755.67 and $27,264.00 respectively.[6] The court erred in this determination.

---

[4] Record p. 65a.

[5] Record p. 35a.

[6] Record pp. 72a and 78a. Eddington also used a totally separate property which plays no part in this condemnation.

While it is true that the interests in this real estate of the various corporate and human entities are similar, the entities themselves are separate and distinct, as evidenced by the individual income tax returns filed. These copies came from a proper source,—the corporation records,—were introduced by the Commonwealth's interrogatories, and are binding on the corporation involved. The noting of deductions on such forms would, prima facie, indicate that such rental payments had been made. The returns should have been admitted and further evidence developed to determine any net gain to the appellees, as a gross receipt rarely represents the profit realized on a transaction. As noted previously, the standard which will defeat detention damages pro tanto is that of net gain.

We have no way of determining what this amount would be and therefore direct a new trial limited to the issue of detention damages with directions to admit the federal tax returns for the years in question and to explore and determine the *net gain,* if any, to the owner-lessor of the property here involved, deducting that net amount from the detention damages previously ordered.

Judgment reversed and the record remanded to the court below for action consonant with this opinion.

Mr. Justice ROBERTS would not remand this matter to the court below but would direct that a credit be given to the Commonwealth in the amount of $11,000.