Commonwealth of Pennsylvania, Acting by and Through the Pennsylvania Game Commission, Appellant *v.* 21.1 Acres of Land in Washington Township, Butler County, and Homer Renick and Patricia Renick, His Wife, Appellees.

Argued May 8, 1981, before President Judge CRUMLISH and Judges ROGERS and WILLIAMS, JR., sitting as a panel of three.

*Stuart M. Bliwas,* Assistant Attorney General, with him, *Harvey Bartle, III,* Attorney General, for appellant.

*Lee C. McCandless, McCandless, Krizner & Price,* for appellees.

OPINION BY JUDGE WILLIAMS, JR., August 20, 1981:

In this eminent domain appeal the Commonwealth of Pennsylvania, acting by and through the Pennsylvania Game Commission (Commission), seeks reversal of a judgment of the Court of Common Pleas of Butler County granting delay compensation to property owners Homer and Patricia Renick (condemnees). Since in the proceedings before our Court and those below the Commonwealth has acted by and through the Commission, we will, for the sake of facility, treat the Commission as being the condemning authority. The judgment here contested was entered incident to the Commission's taking of an interest in land owned by the condemnees.

In March 1973, after the Commonwealth had erected a dam in Washington Township, Butler Coun-

ty, the Commission filed a Declaration of Taking for a flood easement in approximately 21.1 acres of land owned by the condemnees. The interest taken by the Commission was a perpetual right, power, privilege and easement" to occasionally "overflow, flood and submerge" the land in connection with the dam. The Declaration of Taking reserved to the condemnees the right to use and enjoy the land to the extent that such use would not interfere with the easement condemned.

After the condemnees unsuccessfully challenged the Commission's right to take less than a fee simple absolute, the Commission petitioned for a board of viewers.[1] In October 1977, the viewers awarded the condemnees $2500 in damages and delay compensation. Not satisfied with the viewers' award, the condemnees had a trial *de novo* in the Court of Common Pleas of Butler County. In May, 1978, a jury returned a verdict of $15,600 as just compensation for the taking. The lower court molded the verdict to $16,100 to account for certain costs. Thereafter, the parties stipulated that the verdict be paid without prejudice to the right to have the lower court determine the issue of delay compensation. On October 31, 1978, the lower court held an evidentiary hearing on that issue.

As a general principle, when land is taken under the power of eminent domain, the owner thereof acquires the right to its value immediately upon appropriation. Until that value has been definitely ascertained, it is called damages, not a debt due; but when

[1] By previous litigation the instant property owners challenged the Commission's right to condemn less than an estate in fee simple absolute. In *Commonwealth v. Renick*, 21 Pa. Commonwealth Ct. 30, 342 A.2d 824 (1975), we rejected that challenge and upheld the Commission's right to condemn the easement here involved. When, subsequently, the Commission was unable to reach agreement with the owners as to the amount of just compensation, the Commission petitioned for a board of viewers to assess damages,

ascertained the valuation relates back to the time of taking, and the owner is entitled to compensation for delay in its payment, unless just cause to the contrary be shown. *Whitcomb v. Philadelphia*, 264 Pa. 277, 107 A. 765 (1919). However, one exception to this entitlement is statutorily provided by Section 611 of the Eminent Domain Code,[2] which denies delay compensation to a condemnee for the period he remains in possession of the land after condemnation. In part here pertinent, Section 611 declares that:

> The condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation . . . *Compensation for delay in payment shall, however, be paid* at the rate of six per cent per annum from the date of relinquishment of possession of the condemned property by the condemnee, or *if the condemnation is such that possession is not required to effectuate it, then delay compensation shall be paid from the date of condemnation*: (Emphasis added.)

The crucial point of contest in the instant appeal is the lower court's application of the above emphasized part of Section 611.

The lower court's hearing of October 31, 1978 established beyond dispute that the condemnees did not live on the land and that there were no buildings on it. Nor is it disputed that the condemnees used the land solely for the commercial growing of evergreen trees, and that the condemnees continued to cultivate trees on the land even after the Declaration of Taking was filed. The lower court found also, that the condemness failed to present clear evidence that actual flooding of the land had occurred as a result of

---

[2] Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-611.

the dam. In sum, the lower court found that the condemnees had not been deprived of use of the land. The evidence and findings resulted in a judicial order, dated November 6, 1978, decreeing that the condemnees were still in possession of the land, even as of that date, and thus were not entitled to delay compensation.

However, the condemnees filed exceptions to the court's order. And, on the basis of subsequent briefs and argument, the lower court reversed itself: On April 21, 1980, the lower court awarded delay compensation in the sum of $5070, and concluded that the period of delay ran from March 23, 1973, the date the Declaration of Taking was filed. It is that order which is the subject of the present appeal.

In reaching its final decision, the lower court relied on that part of Section 611 of the Eminent Domain Code which allows delay compensation where "the condemnation is such that possession is not required to effectuate it." The court stressed that since the dam was already in place when the Commission condemned the flood easement in the 21.1 acres, flooding of the tract could have occurred at any time thereafter. From this, the court reasoned and held that the mere presence of the dam gave the condemnor all it needed to effectuate the taking, and thus triggered the condemnees' right to delay compensation. The court rejected the argument that in this case there had to be a change of possession by actual flooding before any right to delay compensation could accrue. In that rejection the lower court erred.

It is our conclusion that the instant matter is governed by our decision in *County of Bucks v. .800 Acres of Land,* 32 Pa. Commonwealth Ct. 448, 379 A. 2d 903 (1977). In that case we held that, for purposes of Section 611, the condemnation of a flood easement is a situation wherein the condemnor must obtain

possession in order to effectuate the taking. We further held that the condemnor will gain such possession when the land in question is actually flooded, and that, accordingly, the absence of flooding negates any right to delay compensation.

Although the lower court was cognizant of our decision in the *County of Bucks* case, the court sought to distinguish the present litigation because here, unlike in the *County of Bucks* case, the dam was already in place as of the date the Declaration of Taking was filed. We see no validity in this distinction. Given that possession by the condemnor is necessary to effectuate the taking of a flood easement, and that the condemnor gains no possession until actual flooding, such flooding remains the legally operative event; and that is so whether the flooding will result *ultimately* from a dam in place, one under construction or one still on a drawing board, as of the date of condemnation. There might be differences in the degree of imminence of the operative event, but those differences do not negate the necessity of the event: Flooding has either occurred or it has not.

Given the lower court's own conclusion that the evidence did not permit a finding of flooding from the dam, the court could not, consistent with *County of Bucks,* properly award delay compensation. Yet, notwithstanding that error of law, there remains another issue we must resolve to properly dispose of this appeal: whether, in light of the above legal error, the lower court prejudiced the condemnees by a misconception of the burden of proof.

In its original denial of delay compensation, the lower court concluded that there was no evidence of flooding from the dam and that the condemnees had not been deprived of the use of the land. In that decision, the court ruled that the condemnees had the burden of going forward with evidence and the burden of

proof to establish their right to delay compensation in this case. In their exceptions to the original decision the condemnees disputed having the burden of proof as to actual flooding from the dam.

In its final decision, the lower court reiterated its view that the condemnees had the burden of going forward with evidence to establish their right, and repeated that the condemnees had failed to prove by a preponderance of the evidence that the dam caused flooding of the land. As we have already held, the award of delay compensation in the second decision was based on the lower court's erroneous conclusion that actual flooding was not required to effectuate the taking.

Although the condemnees prevailed under the order now before us, they have raised in this appeal, as a protective matter, the issue of the burden of proof as to actual flooding. They contend that it was not their duty to prove the *occurrence* of flooding from the dam. Rather, they assert, it was the *condemnor's* duty to prove the *non-occurrence* of such flooding. Put differently, this is an assertion that the condemnor had the burden of proving that the condemnees remained in possession during the interval between the Declaration of Taking and the payment of the verdict. Given our resolution that flooding is the critical issue, and since the condemnees objected below to having the proof burden, we must address their argument in that regard.

The question of proof burden in a claim for delay compensation is not directly answered by Section 611 or any other part of the Eminent Domain Code. However, other sources aid in providing the solution. Prior to the Code it was generally held that a property owner was *prima facie* entitled to delay compensation from the date of taking, except for cause shown. *E.g., Rednor, & Kline, Inc. v. Department of Highways,* 413

Pa. 119, 196 A.2d 355 (1964); *Wolf v. Commonwealth,* 403 Pa. 499, 170 A.2d 557 (1961); *Fidelity-Philadelphia Trust Co. v. Commonwealth,* 352 Pa. 143, 42 A.2d 585 (1945); *Whitcomb, supra.* Therefore, the condemning authority had the burden of proving circumstances which operated to *bar or reduce* the right to such compensation. That is, unless the condemnor overcame the presumption in the owner's favor the owner was entitled to delay compensation. *See Hughes v. Commonwealth,* 414 Pa. 606, 202 A.2d 15 (1964); *Pattison v. Buffalo, R. & P. Ry.,* 268 Pa. 555, 112 A. 101 (1920); *Hoffman v. Philadelphia,* 261 Pa. 473, 104 A. 674 (1918); *Hoffman v. Philadelphia,* 250 Pa. 1, 95 A. 322 (1915); *Wayne v. Pennsylvania R. R.,* 231 Pa. 512, 80 A. 1097 (1911).

The presumption in the owner's favor could be overcome and the right to delay compensation totally defeated by the condemnor proving that delay in payment was the fault of the property owner. *Fidelity-Philadelphia Trust Co., supra.* Such fault could be evidenced by excessive demands or obstructive conduct on the part of the owner. *Wayne, supra.* So also, the amount of delay compensation could be reduced upon the condemnor showing that the owner remained in possession and derived value from the realty. *Hughes, supra; Pattison, supra.*

There is nothing in the Eminent Domain Code which abrogates the presumption favoring the owner-condemnee, or which indicates that he or she is no longer deemed to have a *prima facie* entitlement to delay compensation. Accordingly, we conclude that under the Code it remains the condemnor's burden to overcome the presumption that the condemnee is entitled to delay compensation from the date of taking. The effect of Section 611 is to make the condemnee's continued possession an absolute *bar* to any delay compensation whatsoever, and not just a basis for *reduc-*

*ing* the amount thereof as under prior law. *See Re-development Authority of the City of Philadelphia v. Driscoll*, 45 Pa. Commonwealth Ct. 202, 405 A.2d 975 (1979); *Govatos v. Redevelopment Authority of the County of Montgomery*, 11 Pa. Commonwealth Ct. 529, 314 A.2d 536 (1974); *Pittsburgh Urban Redevelopment Authority v. Cleban*, 216 Pa. Superior Ct. 269, 279, 264 A.2d 187, 193 (1970) (concurring opinion). In short, Section 611 makes continued possession a circumstance that statutorily overcomes the presumption in favor of delay compensation and totally defeats the right.[3]

It follows from the application of undisturbed traditional principle, that if a condemnee is to be denied delay compensation by force of Section 611, then the condemnor has the burden of proving the presence of the statutorily defeating circumstance: the condemnee's continued possession. Since in the case at bar the question of continued possession depends on the absence of flooding, it was the condemnor's burden to prove the *absence of flooding* to establish that the condemnees remained in possession. The lower court erred in viewing the condemnees as having the burden of proving the *occurrence* of flooding or dispossession. They had no such burden; for they were armed with a presumption the condemnor had to overcome to defeat their right.

Aside from the condemnor's burden of proof as discussed above, a *condemnee* could by his own admis-

---

[3] The second paragraph of the Comment under Section 611 is as follows: "This changes the existing law which states that the condemnee is prima facie entitled to damages for delay *except* where the delay is the *fault* of the condemnee. . . ." (Emphasis added.) We construe this Comment to mean that Section 611 changes the law such that fault on the part of the condemnee is no longer the *sole* basis for defeating the prima facie entitlement, and that continued possession by the condemnee now has that defeating effect as well.

sions defeat the presumption in his favor. *See Devlin v. Piechoski*, 380 Pa. 146, 110 A.2d 241 (1955); *Silberstein v. Showell, Fryer & Co.*, 267 Pa. 298, 109 A. 701 (1920); *Rodgers v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 552, 397 A.2d 1286 (1979). There is in the case at bar evidence from the *condemnees themselves* which indicates they continued to use the land pursuant to their tree business for some years after the Declaration of Taking. The duration of such continued use would seem indicative of a flood-free period, for which delay compensation would be disallowed under our decision in *County of Bucks*. However, in its present state, the evidence from the instant condemnees is not clearly revealing as to when, if at all, their use of the land was prevented by flooding from any source.[4] Therefore, we leave the question of the condemnees' use as a matter for the lower court to consider on further proceedings.

Because of the dual errors committed below, we reverse the order of the lower court; and, we remand this case to the court for further proceedings consistent with the principles and considerations set forth in this opinion.

## Order

And Now, the 20th day of August, 1981, the judgment of the Court of Common Pleas of Butler County at A.D. No. 72, June Term 1973, the above matter, is reversed; and this case is hereby remanded to that court for further proceedings consistent with the annexed opinion.

---

[4] For example, if in this case the condemnees' own evidence showed that they had flood-free use of the land for four years after the Declaration of Taking, there would be no right to delay compensation for that period.