**NOT PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 15-2880

EAGLEBANK, Attorney-in-fact for Virginia Investment Partnership

ROBERT G. VAN HOECKE
(Intervenor in District Court)

v.

BR PROFESSIONAL SPORTS GROUP, INC.

v.

VIRGINIA INVESTMENT PARTNERSHIP, LLC.

Robert G. Van Hoecke,
            Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 2-14-cv-05550)
District Judge: Honorable Paul S. Diamond

Argued on April 6, 2016

(Opinion filed: May 20, 2016)

Before:  FISHER, COWEN, and RENDELL, Circuit Judges

Jennifer Cranston McEntee, Esquire
Albert A. Ciardi, III, Esquire **(Argued)**
Ciardi, Ciardi & Astin
2005 Market Street
One Commerce Square Suite 3500
Philadelphia, PA   19103

Counsel for Appellant


Sheryl L. Axelrod, Esquire
The Axelrod Firm, P.C.
The Beasley Building
1125 Walnut Street
Philadelphia, PA   19107

Michael J. Lichtenstein, Esquire **(Argued)**
Shulman, Rogers, Gandal, Pordy & Ecker
12505 Park Potomac Avenue
Sixth Floor
Potomac, MD   20854

Counsel for Appellee

-----

O P I N I O N[*]

-----

**RENDELL**, Circuit Judge:

Eaglebank has brought this action to recover assets held by BR Professional Sports Group ("BR") that secured a loan Eaglebank made to Virginia Investment Partnership ("VIP"). VIP defaulted on the loan and Eaglebank claimed a first lien on the assets. Robert Van Hoecke ("Van Hoecke") intervened in the action, asserting that he had a security interest senior to Eaglebank's in VIP's assets. Although his lien was perfected

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

after Eaglebank's, Van Hoecke asserts that his lien is nonetheless senior to Eaglebank's because Eaglebank's lien is invalid as VIP's agent exceeded his authority in entering into the loan agreement with Eaglebank. The District Court disagreed and granted summary judgment for Eaglebank, finding that there was no genuine dispute that VIP's agent had acted with actual authority in entering into the loan agreement. Van Hoecke appeals. We will affirm the Order of the District Court, albeit on the alternative grounds that, whether or not VIP's agent had actual authority, he acted with, at least, apparent authority, to enter into the loan agreement with Eaglebank.

## I. Background

VIP is a limited liability company organized under Virginia law for the purpose of purchasing a minor league baseball team from BR. **App. at 5.** To finance this purchase, VIP obtained loans from both Eaglebank and Van Hoecke, with each loan secured by all of VIP's assets, including a $1.25 million deposit that VIP paid to BR. **App. at 5-6.**

Eaglebank's loan of $3.25 million was made on April 17, 2013, and a financing statement for the loan was filed that same day. **App. at 5.** The loan agreement was signed by VIP's Executive Vice President and Chief Financial Officer Harry Stokes ("Stokes"). The Board of Managers of VIP issued a "Borrowing Resolution" on April 15, 2013, that authorized Stokes to "borrow, as a cosigner or otherwise, from time to time from [Eaglebank] . . . such sum or sums of money as in [his] judgment should be borrowed, without limitation." App. at 291. As part of the closing on the loan agreement, Eaglebank received an opinion letter from VIP's counsel stating that Stokes had the authority to execute the loan agreement. **App. at 636-38**

3

Van Hoecke's loan of $504,000 was made five months later on September 12, 2013, and a financing statement was filed shortly thereafter. **App. at 6.**

In April 2014, VIP's efforts to buy the minor league baseball team from BR failed. **App. at 6.** VIP then defaulted on its loan to Eaglebank. Eaglebank, acting as "attorney-in-fact" for VIP, brought this action in September 2014, seeking to recover the $1.25 million deposit VIP had paid to BR, which secured Eaglebank's loan. **App. at 6.** Van Hoecke intervened in December 2014 asserting that his security interest in the $1.25 million deposit was senior to Eaglebank's because Stokes had lacked authority to enter into the loan agreement with Eaglebank. **App. at 6.** Van Hoecke argued (a) that the borrowing resolution from the Board of Managers was limited to $750,000, (b) that Stokes and VIP also needed approval of the Members of the LLC in order to borrow more than $2 million, and (c) that Eaglebank should have known of these limitations. Eaglebank disputed each of these assertions, arguing that (a) Stokes had actual authority to enter into the loan agreement on VIP's behalf, (b) even if he lacked actual authority, Stokes acted with apparent authority in entering into the loan agreement, and (c) at any rate, the transaction had been ratified by VIP. Eaglebank and Van Hoecke filed cross-motions for summary judgment.

## II. Decision of the District Court

The District Court granted summary judgment for Eaglebank and against Robert Van Hoecke. The District Court first noted that Van Hoecke had not cited any controlling authority that a properly perfected security interest would be rendered invalid if the borrower lacked the authority to enter into the underlying loan agreement. **App. at 8.**

4

Nevertheless, the District Court assumed, *arguendo*, that Van Hoecke was correct on this point.[1] **App. at 8.**

The District Court engaged in a choice-of-law analysis. **App. at 8-9.** The Court noted that there appeared to be no conflict between Pennsylvania and Virginia law on the issue of when an agent acts with authority, and, therefore, determined that it could refer to the laws of both states interchangeably. **App. at 8-9.** The Court applied Virginia law to the interpretation of VIP's Operating Agreement pursuant to a choice-of-law clause in that agreement. This is not an issue on appeal. **App. at 9.**

---

[1] Although neither party adequately addressed the issue, and we thus decline to resolve the case on this basis, we have our doubts as to whether, assuming all of Van Hoecke's alleged facts to be true, he would be entitled to relief. Generally, absent any fraud or self-dealing (of which there are no allegations here), the effect of an officer exceeding the scope of his or her authority in entering into a contract is to make that contract *voidable*—as distinct from *void ab initio*. *See Michelson v. Duncan*, 407 A.2d 211, 218-19 (Del. 1979) ("The essential distinction between voidable and void acts is that the former are those which may be found to have been performed in the interest of the corporation but beyond the authority of management, as distinguished from acts which are Ultra vires, fraudulent or gifts or waste of corporate assets."); 2A C.J.S. *Agency* § 163 ("[A]cts which exceed the scope of agency authority are merely voidable, not void . . . ."). When a contract is voidable, it does not become void unless one of the parties to that contract—typically, the party injured by the defect in the contract—elects to void it. *See* 2A C.J.S. *Agency* § 163 ("The fact that an agent has exceeded his or her authority is ordinarily a defense personal to the principal."); *voidable*, Black's *Law Dictionary* (9th Ed. 2009) ("[C]apable of being affirmed or rejected at the option *of one of the parties*." (emphasis added)). Therefore, because Van Hoecke was not a party to the Eaglebank-VIP loan agreement, he likely lacks the ability to invalidate it. *See, e.g.*, *Granato v. Deutsche Bank Nat. Trust Co.*, No. SA-13-CV-417-DAE, 2013 WL 5839326, at *3 (W.D. Tex. Oct. 29, 2013) ("Rather, whether a plaintiff has standing depends on whether the plaintiff's challenge to the foreclosure would render the foreclosure void or voidable."); *Elbar Invs., Inc. v. Wilkinson*, No. 14-99-00297-CV, 2003 WL 22176624, at *2 (Tex. Ct. App. Sept. 23, 2003) ("A subsequent purchaser or junior lienholder may collaterally attack the sale only if it is entirely void. A party having no privity with the mortgagor may not complain of irregularities that would render the sale merely voidable . . . . " (citation omitted)).

The District Court determined that the Board of Managers of VIP needed to approve Stokes's actions pursuant to § 6.5(c) of the Operating Agreement, which requires Board approval for all loans greater than $2 million. **App. at 10.** The Court then found that the Board had approved the loan by passing a "Resolution" authorizing Stokes to "borrow . . . such sum or sums of money as in [his] judgment should be borrowed, without limitation." App. at 10. The District Court also noted that VIP had "expressly manifested its consent to Stokes' actions" by using the loaned money to "pay its operating expenses, such as rent, salaries, and merchandise." App. at 11.

The District Court rejected Van Hoecke's argument that § 7.5(a) of the Operating Agreement required Stokes to obtain approval from a majority of the Members. The District Court found that the Eaglebank loan fell under the exception for "financing to be obtained from Lenders," for which approval of the Members was not required. **App. at 12-13.** The Agreement did not define "Lenders," however, and Van Hoecke urged that, pursuant to an earlier Operating Agreement, "Lenders" referred to VIP Members who themselves lent VIP money. However, the Court disagreed, and found this language to unambiguously refer to lenders in a broad sense, and refused to consider parol evidence as to its meaning. **App. at 12-13.** Thus, this limitation did not apply, and since a majority of the Managers had approved the loan, Stokes had actual authority.

Finally, the District Court noted that Eaglebank had "argued persuasively that Stokes acted with apparent authority and that VIP, by accepting and using the loan proceeds, ratified the deal." App. at 13. However, the District Court believed it

6

unnecessary to address these arguments, having already determined that Stokes acted with actual authority in entering into the Eaglebank loan.

### III. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We review an order granting summary judgment de novo, applying the same standard used by the District Court. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015). We may affirm the District Court on any grounds supported by the record. *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc).

### IV. Analysis

We find the District Court's resolution of the issue of actual authority to be a close call, given the absence of a definition of "Lenders" in the Operating Agreement and the resulting potential for ambiguity. However, even if this issue were resolved in Van Hoecke's favor, we conclude that Stokes acted with, at least, apparent authority in entering into the loan agreement with Eaglebank.[2] "Apparent authority is power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted." *Revere Press, Inc. v. Blumberg*, 246 A.2d 407, 410 (Pa. 1968). Apparent authority thus flows from acts of the principal, but is viewed from the lens of what the other party should reasonably know. *See Hartley v.*

---

[2] Although the District Court did not reach the issue of whether Stokes acted with apparent authority (but did note that Eaglebank had argued "persuasively" that Stokes had apparent authority to enter into the loan agreement), this argument was fully presented to the District Court, and we can rest our affirmance on this issue. *See Hedges v. Musco*, 204 F.3d 109, 116 (3d Cir. 2000) ("[W]e may affirm a district court's grant of summary judgment on any ground that appears in the record . . . .").

7

*United Mine Workers of Am., Robena Local Union No. 6321*, 113 A.2d 239, 247 (Pa. 1955); Restatement (Second) of Agency § 49 (1958). "The authority of an agent of a corporation may be presumed from his position and the nature of the act." *Rednor & Kline, Inc. v. Dep't of Highways*, 196 A.2d 355, 358 (Pa. 1964).

Stokes, by virtue of his position as the executive vice president and chief financial officer of VIP, was an agent cloaked with the authority to enter into contracts and obtain financing on behalf of VIP, the principal.[3] *See Rednor & Kline*, 196 A.2d at 358 ("If the principal puts one into, or knowingly permits him to occupy, a position in which, according to the ordinary experience and habits of mankind, it is usual for the occupant to have authority of a particular kind, anyone having occasion to deal with one in that position is justified in inferring that the person in question possesses such authority, unless the contrary is then made known." (footnote omitted)).

Given that Stokes was cloaked with the authority to borrow money on behalf of VIP, the issue, then, is whether, even if Van Hoecke were correct that the "Members" needed to approve this loan, Eaglebank knew or reasonably should have known this. There is no support in the record that Eaglebank had, or reasonably should have had, such knowledge. To the contrary, VIP's actions would have led a reasonable person to believe that Stokes had the authority to borrow the $3.25 million from Eaglebank. VIP's counsel assured Eaglebank in an opinion letter that VIP could enter into the loan. Moreover,

---

[3] The principal is VIP—the entity itself—and not, as Van Hoecke argued below, the individual Members. *See* 2 O'Neal and Thompson's Close Corporations and LLCs: Law and Practice § 8:5 (Rev. 3d ed.) ("Officers are agents of the corporate entity."). Thus, the question is whether VIP—the entity—led Eaglebank to believe that Stokes had the authority to enter into the deal.

8

VIP's Board of Managers passed a specific resolution authorizing Van Hoecke to enter into the loan agreement and borrow money "without limitation."[4] Van Hoecke notes that Eaglebank had a copy of the 2011 Operating Agreement, but the 2011 Operating Agreement is, at best, ambiguous as to whether the Members must vote to approve the loan, *see* Brief of Appellant at 22-23 (arguing that § 7.5(a) of the 2011 Operating Agreement is ambiguous), and it was reasonable, given the ambiguity, for Eaglebank to rely on the resolution passed in connection with the loan and on VIP's counsel's interpretations of the requirements of VIP's Operating Agreement. Van Hoecke's efforts to discredit the opinion letter are unavailing; it would reasonably lead a lender to believe that Stokes had the necessary authority. We thus conclude that no reasonable jury could find that Stokes acted without, at least, apparent authority in entering into the agreement.

## VI. Conclusion

For the foregoing reasons, we will affirm the Order of the District Court awarding summary judgment for Eaglebank.

---

[4] Van Hoecke contends that the Borrowing Resolution noted a limitation of $750,000. But the Borrowing Resolution explicitly notes that the $750,000 figure is "for Lender's use only and do[es] not limit the applicability of this document to any particular loan or item." App. at 291. We agree with the District Court that the $750,000 figure cannot be read as a limitation on the authority of Stokes to borrow. To the contrary, by its terms, Stokes was authorized by the Board to enter into the loan agreement with Eaglebank for "such sum or sums of money as in [his] judgment should be borrowed, without limitation." *Id.*